JOHN R. JOHNSON, Administrator, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, December 4, 1911.

1. RAILROADS: Operating Trains: Injury to Servant: Passing Between Cars: Negligence: Contributory Negligence. Deceased was employed by defendant as a "freight digger." He worked at night in separating freight in the cars and passing it out for proper reloading. On the night he was killed it appears that he was the last man who left the loading platform; he had sealed a car on one of the three switch tracks leading to the platforms, and started across to the office to give in his time. In doing so he attempted to pass between two cars on one of the switch tracks by stepping on the dead woods of the cars, or beams at the ends, this being a common practice of the workmen. One of these two cars was a bad order car, the draw bar being out. As deceased passed through, an engine of defendant came against the cars on this track and deceased was caught between the cars and killed. The evidence tended to show that the engine came in on this track before it had

Johnson v. Railroad.

been ordered to do so and that deceased had no reason to believe that there was any danger at the time he passed between the cars. There was also evidence of the failure to sound whistle or bell and of a failure to keep proper signal lights displayed, so as to prevent the switch engine from running against the car. *Held*, that the question of defendant's negligence was for the jury and that deceased was not guilty of contributory negligence, as a matter of law.

2. ————: **Contributory Negligence: Passing Between Cars: Where no Danger is Expected.** Although it is held to be negligence *per se* for a person to attempt to cross between cars to which an engine is attached, or without looking to see if an engine was attached, at a place where the street was being obstructed, and where it was the duty of the company to move the cars, yet, it does not follow that an employee of a railroad company is guilty of contributory negligence in passing between cars when he has every reason to believe that he has ample time to get across before the engine would come in on the track and begin switching, and this is true even though the employee might have passed around the car, for if he had no reason to believe that the way between the cars was unsafe, he would not be guilty of contributory negligence in selecting that way instead of the one around the car.

3. ————: **Operating Trains: Penalty Statute: Failure to Display Signal Lights.** An employee whose duty it was to assist in the handling and reloading of freight at a division point, was caught and killed as he was passing between two freight cars on a switch track near the freight depot. An action was brought under section 5425, Revised Statutes 1909, on the theory that he was killed through the negligence of the defendant in running or operating the engine or cars and one of the acts of negligence submitted to the jury was a failure to keep proper signal lights by night displayed at or near the switch so as to prevent the switch engine from being run on the switch track and against the cars until the work of loading had been completed and the cars ready for switching. The evidence on this question is examined and it appears that the movements of the engine were controlled by the presence or absence of these lights and served no other purpose; *held*, that this ground of negligence was properly submitted under the penalty statute.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

Affirmed.

*W. F. Evans* and *Mann, Johnson & Todd* for appellant.

(1) Johnson was guilty of contributory negligence in attempting to pass between the two cars at the time and place and in the manner he did, the cars being so close together that the said Johnson, although a very slender man, had to turn edgeways or sideways and attempt to sidle through between the cars instead of walking straight through, making it more apparent that it was an act of great negligence for him to attempt to go between the cars. Hudson v. Railroad, 101 Mo. 13; Hudson v. Railroad, 123 Mo. 445; Corcoran v. Railroad, 105 Mo. 399; Bean v. Assurance Co., 50 Mo. App. 459; Lewis v. Railroad, 17 Am. Rep. 521; Bird v. Railroad, 48 N. W. 691; Rumpel v. Railroad, 22 L. R. A. 725; 3 Elliott on Railroads, sec. 1169; 2 Thompson on Negligence, sec. 1674; Furey v. Railroad, 51 Atl. 505; Magoon v. Railroad, 31 Atl. 156; Howard v. Railroad, 21 Pac. 267; Studer v. Railroad, 66 Am. St. Rep. 39. (2) Johnson had a choice of two ways of going to the freight depot, one of which was perfectly safe, i. e., to go out the east door of the covered platform and around the cars—the other subject to risk and dangers, i. e., between the cars, and voluntarily chose the dangerous way and was therefore, guilty of contributory negligence and there can be no recovery for his death resulting from such choice of the more dangerous way. Moore v. Railroad, 146 Mo. 517; Hurst v. Railroad, 163 Mo. 323; Smith v. Box Co., 193 Mo. 737. (3) The court erred in giving plaintiff's instruction number 2, because said instruction number 2 should not have included in and permitted a recovery by plaintiff upon a finding that the switch engine was run in upon track one before the foreman of the switch crew had secured the switch list and had determined which track was to be or should be first pulled. The evidence shows that it was not cus-

tomary for the men working on the platform to know, and that they did not generally know, when the switch list was delivered to the switch foreman, and therefore that ground of alleged negligence had nothing to do with this case and there being no evidence which would support a recovery on that ground it was error to include that ground in the instruction and allow a recovery upon it. Wojtylak v. Coal Co., 188 Mo. 283; Black v. Railroad, 217 Mo. 672; Crumley v. Timber Co., 144 Mo. App. 528. (4) It was error for the court having given plaintiff's instruction number 2, authorizing the jury to find for the plaintiff, because of the failure to so place blue lights, to give instruction No. 3, declaring the measure of damages under section 5425 instead of under section 5426. This was reversible error. Culbertson v. Railroad, 140 Mo. 62; Rapp v. Railroad, 106 Mo. 423; King v. Railroad, 98 Mo. 235; Crumpley v. Railroad, 98 Mo. 34; McKenna v. Railroad, 54 Mo. App. 161; Flynn v. Railroad, 78 Mo. 195.

*Sizer & Kemp* for respondent.

(1) On the crossing case theory the demurrer was properly refused, and under the facts in this case the question of contributory negligence was one for the jury. Wilkins v. Railroad, 101 Mo. 105; Schmidt v. Railroad, 119 Mo. 273; Burger v. Railroad, 112 Mo. 238; King v. Railroad, 143 Mo. App. 279; Dunlap v. Chemical Works, 139 S. W. 831. (2) In the absence of proof to the contrary deceased is presumed to have exercised ordinary care for his own safety at time he attempted to cross. Younge v. Railroad, 133 Mo. App. 141; Goff v. Transit Co., 199 Mo. 694; Bushing v. Gas Light Co., 73 Mo. 220; Soeder v. Railroad, 100 Mo. 673. (3) Under the custom shown in evidence, and as deceased was evidently going as rapidly as he could to the office to report to his foreman, he had a right

to assume that the defendant would not imperil his safety by moving cars or having a switch engine butt into them without giving him reasonable notice. Koerner v. Car Co. 209 Mo. App. 158; Seals v. Whitney 130 Mo. App. 420; Meadowcroft v. Railroad 79 N. E. 266; Scullane v. Kellogg, 48 N. E. (Mass.) 622; Aetna v. Powder Co. v. Earlandson, 71 N. E. 185. (4) The defense of contributory negligence is more generally and ordinarily a question of fact for the jury, and unless it can be seen that the danger was so great and imminent, as to threaten immediate injury an appellate court cannot interfere with the jury's conclusion. Shore v. Bridge Co., 111 Mo. App. 291; Millsap v. Beggs, 122 Mo. App. 7; Meadowcraft v. Railroad, 78 N. E. 266; Aetna v. Earlandson, 71 N. E. 185. (5) If the evidence had shown that Johnson even knew that the draw bar was missing and that the opening between the ends of the cars was not so wide as between other cars, yet if he believed that he could safely go through there with the execrise of ordinary care, even then the court could not hold that he was guilty of contributory negligence as a matter of law. Curtis v. McNair, 173 Mo. 270; Burkard v. Rope Co., 217 Mo. 466; Buckner v. Horse & Mule Co., 221 Mo. 700; Ludwig v. Cooperage Co., 136 S. W. 749. (6) Respondent insists that the locomotive car or cars in and about the freight sheds could not be run or operated with any degree of safety without proper signals, and therefore, the failure to have out the light under the evidence in this case was a proper ground of negligence under the section governing the running, operation or management of the locomotive, car or train of cars. Pratt v. Railroad, 139 Mo. App. 505; Rinard v. Railroad, 164 Mo. 287; Peters v. Railroad, 150 Mo. App. 725; McKnight v. Construction Co., 43 Iowa 406; Akerson v. Railroad, 75 Mo. 676; Nichols v. Railroad, 62 N. W. 386.

COX, J.—Action by administrator of J. C. Johnson for damages for the death of Johnson. Judgment for plaintiff for $4000 and defendant has appealed.

Deceased was in the employ of defendant at Monett, Missouri as "freight digger" and while attempting to pass between two freight cars was caught and killed by the cars being suddenly jammed together. Monett is a division point on defendant's road and a large amount of freight is removed from cars there and reloaded for shipment to its destination. To facilitate this work three switch tracks are maintained each of which connects with the lead track that leads to the round-house where engines are kept. In a general way, these switch tracks run east and west and connect with the lead track on the east. These tracks are numbered 1, 2 and 3, counting from the north. North of track 1 is the office. Between tracks 1 and 2 is a covered platform, 640 feet long the floor of which is on a level with the floor of the cars. Johnson worked at night and his duties were to go inside the cars and dig out or separate the freight therein and pass it out to the truckers on the platform who would truck it to the proper car for reloading. His time to quit work was usually 1 a. m. but if the work was not done at that time he was required to stay until it was finished. When the freight was all reloaded, the cars were then sealed and this was the last act of the workmen before the cars were turned over to the switch crew to be placed in the proper train. On the night of Johnson's death there were several cars on track 1, three of which extended east of the office. Johnson was apparently the last man that left the platform that night. He sealed a car on track 2 and evidently started across to the office, and in doing so, attempted to pass between two cars on track 1 by stepping on the dead woods of the cars, which were beams on the ends of the cars on a level with the floor of the platform. One of the two cars between which he attempted to

cross was a bad order car having the draw bar out and was fastened to the other car with a chain. The condition of this car permitted these two cars to come closer together than the other cars, and as Johnson passed through, the engine came against the cars on this track and as these two cars came together Johnson was caught between the truss rods of the two cars and killed. It was the common practice for the workmen after quitting their work to go across to the office to give in their time, get their coats, lunch baskets, etc., before going home. It was also a common practice for them in doing so, and while at their work also, to cross from one platform to another between the cars by stepping on the dead wood. Thus far there is no conflict in the testimony. Plaintiff's testimony further tended to show that when the work was completed the foreman made up a switch list, that is, a statement giving the number and location of each car to be taken out. This switch list was then turned over to the foreman of the switch crew and he then determined which cars should be first taken out and gave orders to the engineer in charge of the switch engine accordingly. That it was the duty of the engineer to keep his engine on the lead track and not come in on the switch track until he was ordered to do so; that the reloading should be completed, the cars sealed and the switch list made out and delivered to the switch foreman before any orders to come in on a switch track were given to the engineer and that the workmen were all familiar with these practices. That for a long time prior to the accident blue lights had also been maintained on the track between the cars and the lead track or on the ends of the cars to prevent the switch engine coming in on the switch track before the cars were ready to be moved, but that for 2 or 3 weeks just prior to the accident the use of these lights had been discontinued and none were in use on this night. The engineer without receiving any orders

to come in on track 1, at about 1:10 a. m., ran against the cars on this track and thus caught and killed Johnson. Other facts will be noticed in the course of the opinion.

The first contention of appellant is that the demurrer to the testimony should have been sustained upon the ground that it affirmatively appears that deceased was guilty of contributory negligence. This contention is based upon two grounds. First, that it was negligence per se for deceased to attempt to pass between the two cars under the circumstances of this case. As viewed from defendant's standpoint, the one car being out of repair, thus making it sure that in case the engine would strike the cars on that track while he was passing through between them, they would likely be jammed so close together that he would be caught, and that Johnson did not know and could not know that the engine was not likely to come against the cars at any time shows him to have been guilty of negligence as a matter of law in attempting to pass between the cars at that time and cites us to the following cases to sustain this contention. [Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15; Hudson v. Railroad, 123 Mo. 445, 27 S. W. 717; Corcoran v. Railroad, 105 Mo. 397, 16 S. W. 411; Bean v. Employers Liability Assurance Co., 50 Mo. App. 459 and numerous cases from other States.] All the cases cited from this State were cases in which the railroad had stopped cars on a public crossing and the party was injured while attempting to go between the cars or to climb over between them. In none of these cases is it held to be negligence per se to attempt to cross between the cars alone, but coupled with the act of crossing is the further fact that the attempt was made without looking to see whether or not the engine was attached and the further fact that as the company was obstructing the street with the cars the parties should have expected the cars to be moved by the company as it was its duty

to do. So in this case if it were conceded that Johnson ought to have expected the cars to be moved by the engineer coming in on that track at any time, then it would have been negligence for him to have attempted to cross between two cars that were likely to be jammed so close together as to catch him when the engine should strike them. But if we give plaintiff the benefit of the testimony most favorable to him as we must do in considering a demurrer to the testimony, we have here a very different state of facts. Defendant and other workmen were constantly passing between the cars while at work and in going to the office after work. These cars were not to be moved until work was completed and the switch list made and delivered to the switch foreman. The switch list was not completed until the cars were all sealed and it was the duty of the engineer to keep his engine on the lead track until ordered in on the switch track. Johnson knew of the usual practice and as he sealed the last car and started to the office he had every reason to believe that he had ample time to get across before the switching would begin. There was nothing to apprise him of the fact that an engine might come in on track 1 while he was attempting to cross. While the place at which he attempted to cross was, by reason of the bad order car, less safe in case the engine should come in than it would have been between other cars, yet if the engine did not come in, one was as safe as the other for there was no danger in either unless the cars should be moved. No bell was rung nor whistle sounded, and in addition the engineer ran in on that track without waiting for orders when in fact he was not wanted on that track at that time at all. Under these facts it was not negligence as a matter of law for Johnson to attempt to pass between these cars at the time he did but the question of his negligence was one for the jury.

The evidence disclosed that there were steps at the ends of the long platform on which Johnson was when he sealed the last car, and he could have passed down these steps and by going around the cars on track 1 could have reached the office without crossing from one platform to another between the cars as he attempted to do. Upon this testimony appellant seeks to invoke the doctrine that when there is a safe way and an unsafe way open to a party and he voluntarily takes the unsafe way he is guilty of contributory negligence. Appellant's position as to the proposition of law asserted is correct as held by all the authorities but it does not fit in this case. As we have already said the way Johnson adopted, that of passing between the cars, was not unsafe unless the engine should be brought in against the cars while he was attempting to cross between them. This ground for asserting that Johnson was guilty of contributory negligence is refuted by the same facts which destroy the other ground. Both hinge upon the question whether deceased had reasonable ground to apprehend the coming in of the engine at that time. If he did he was guilty of negligence and vice versa. The issue as to the negligence of deceased was submitted under instructions fair to appellant, and the finding of the jury thereon is sustained by substantial testimony and is therefore binding upon us.

The other instructions are assailed as erroneous. The action is based on the penalty statute Sec. 5425, Stat. 1909 and the jury were instructed that if they found for plaintiff to assess the damages at not less than $2000 nor more than $10,000 as provided in that section. In another instruction submitting the question of negligence of defendant three acts of negligence were submitted as follows:

"First: The failure to ring the bell or sound the whistle of the locomotive or give other sufficient warn-

ing of their intention to run the switch engine in upon said track at the time.''

"Second: The running of said switch engine in upon track number 1 before the foreman of the switch crew had secured the switch list and had determined which track was to be or should be first pulled.''

"Third: The failure to keep proper signal lights by night so placed and displayed at or near the switches so as to prevent the switch engine from being run in against the cars on track 1 over and between which said Johnson was then passing.''

The first act of negligence submitted is conceded to be unobjectionable. The second, that of running the engine in on track 1 before the foreman of the switch crew had received the switch list and determined which track was to be first pulled is attacked on the ground that it is not warranted by the testimony. It is contended by appellant that there was no custom in vogue as to that matter but that the engine was likely to come in at any time and especially after 1 a. m. when the work was expected to be done and the cars ready and that the engine did often come in before the switch list was delivered. Some of the testimony supported that view but there was testimony to the contrary. J. L. Hobbs, the foreman in charge of the work and whose duty it was to deliver the switch list to the switch foreman, testified in part as follows:

"Q. When would you turn this switch list over to them? A. I usually turned the switch list over to them after the freight was all loaded and I was through with the list myself. ·

"Q. Would that switch list inform the foreman of anything? A. No, sir; only that our work was completed and we were closing the house. As soon as the men were through with their work he would be notified and would hook on to them.

"Q. What was the custom with reference to them coming down and coupling on with reference to the time the foreman gave them the switch list? A. They had no right to do that until he told them which to pull first.

"Q. State if you know what knowledge, if any, Mr. Johnson had and your men had with reference to your custom of handling the switch list? A. My custom of handling the switch list?

"Q. Yes, sir. A. They were all familiar with that, I think. I had warned them time and again that they would be notified and that the switch engine wouldn't be allowed to come against the cars until they were given permission.

"Q. When would you give permission? A. When the men were through their work. When the cars were all closed and sealed."

This testimony alone tends to show that the men in charge of the engine had no right to come in on the switch track until the switch foreman had received the switch list and then directed them where to come in and that this was not done until the switch list was delivered to the switch foreman and that the switch list was not delivered until the work was completed and the cars sealed. That Johnson and the other workmen were familiar with the custom. If this were true then the workmen understood that until the work was completed, the switch list made out and delivered to the switch foreman and his order conveyed to the engineer, the engine would not come against any of the cars and there would be no danger in passing across between them. Johnson knew when he sealed the last car that he would have ample time to cross, before the engine, if it followed the usual custom as above described, could get to the cars on track 1 and it was negligence for the engineer to come in and butt against those cars at the time he did. This contention must be ruled against appellant.

The third act of negligence, to-wit, failure to keep proper signal lights to prevent the engine coming in on the switch track is assailed as not coming under section 5425 which is confined exclusively to negligence in running or operating the engine or cars. Appellant insists that if the failure to keep proper signal lights was negligence at all, it came under section 5427 where the damages recoverable are not to exceed $10,000 with no minimum fixed as is the case in section 5425. This action is bottomed on section 5425 and if the failure to keep proper signal lights had nothing to do with the operation of the engine then it did not come under section 5425 and it was error to include that act of negligence and at the same time fix the measure of damages at not less than $2000 nor more thean $10,000 as provided under that section. The cases cited by appellant as authority on this question, to-wit, Culbertson v. Met. St. Ry., 140 Mo. 35, l. c. 62, 36 S. W. 834; Rapp v. Railroad, 106 Mo. 423, 17 S. W. 487; Crumpley v. Railroad, 98 Mo. 34, 11 S. W. 244; King v. Railroad, 98 Mo. 235, 11 S. W. 563; Flynn v. Railroad, 78 Mo. 195; McKenna v. Railroad, 54 Mo. App. 161, have been carefully examined by us and we find that they are all cases under one or another of the following heads: Failure to erect and maintain a sign at crossing of a highway. Permitting obstructions to remain on the right of way in such a way as to obstruct the view of travelers on the highway when approaching the crossing. Defective crossing or track. Failure to keep sufficient or competent watchmen at a crossing. It is apparent that none of those, unless it be the failure to keep a watchman at the crossing, could have anything to do with the operation of the train and therefore could not come under section 5425. The watchman at the crossing is usually stationed there to warn travelers on the highway of the approach of a train so they may not attempt to cross

160 App.—6

when a train is near and in the performance of that duty his conduct has nothing to do with the operation of the train but is for the accommodattion of the traveler on the highway. If it were shown, however, that it was the duty of those in charge of the train to stop it at the crossing under certain conditions and the watchman was placed there for the purpose of notifying those in charge of the train when to stop, we should have no hesitancy in holding that his duty was connected with the operation of the train. In this case it was shown that when the blue lights were kept on the track by appellant, they were put there for the purpose of notifying the switch crew in charge of the engine that men were still at work in the cars and not to come in. When the work was finished and the cars released, the lights were removed and that was notice to the switchmen, that the cars were ready to be taken out. The movements of the engine were controlled in that particular by the presence or absence of the lights, and aside from the operation of the engine, the lights served no purpose at all. When the lights were used, they served a useful purpose in preventing the engine from prematurely butting against cars and had there been a light on track 1 on the night Johnson was killed, the engine would have stopped before striking the cars and the accident would have been averted.

After a careful examination of this record our conclusion is that the case was well tried. The evidence supports the finding and the judgment will therefore be affirmed. All concur.