CHARLES P. GLENN, Administrator of the Estate of HERBERT GLENN, deceased, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 11, 1912.

1. NEGLIGENCE: Proximate Cause. A proximate cause in the law of negligence is such a cause as operates to produce particular consequences, without the intervention of an independent unforeseen cause, without which the injuries would not have occurred.

2. ———: **Custom: Defective Switch.** Notwithstanding the switch where the accident occurred may not have been constructed and maintained in the usual and customary manner, yet, if its construction and maintenance were reasonably safe, there was no negligence in so constructing and maintaining it.

3. **EVIDENCE: Impeaching Witness.** It is error to admit evidence offered to impeach testimony of a witness called by the same party to the cause.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *T. B. Buckner* for appellant.

*H. J. Latshaw* and *L. W. Dempsey* for respondent.

BROADDUS, P. J.—This is a suit by Charles R. Glenn, as administrator, to recover damages on account of the alleged negligent killing of Herbert Glenn by the defendant, a street railway company.

The deceased was killed on the 24th day of February, 1908, at about eight o'clock p. m. at Eighteenth and Jackson streets, in Kansas City, Missouri. The deceased was twenty-seven years of age, and at the time in the employ of defendant. At the same time, a man by the name of Walker was also in the employ of defendant. The two were employed about the car barn of defendant, and Glenn was not a motorman, and Walker only once in a while acted as such.

Plaintiff's evidence tends to show that on the day in question deceased was out on the road in a certain car, but under what circumstances he does not show.

The defendant's explanation is that one of the cars in use became crippled, which fact was telephoned to the barn, whereupon Glenn got out another car to take its place. Walker got onto this car and

deceased asked him to operate it. The passengers were transferred to this car. After this, according to plaintiff's evidence, defendant's superintendent at the barn, under whose orders Glenn was working, said, "Glenn, go out and get that car, the motorman is drunk;" that Glenn went out and got on the front vestibule, but did not succeed in getting control of the car. The car was operated by Walker on east to Jackson street, thence south on Jackson to its terminus. The grade on Jackson street from Twenty-fourth to Twentieth street is rather a steep down grade, from Twentieth street to Eighteenth street, the grade is not so steep. At Eighteenth street defendant operates a railroad north on Jackson street. There is a switch at Eighteenth and Jackson streets which must be manipulated before a car going north on Jackson street can pass, but there is no provision made for manipulating the switch to let the cars pass that are being operated on the Eighteenth and Jackson street line, as they can pass back and forth, the switch being open for that purpose, and at all times closed, until manipulated, to the cars passing on the line operated north and south on Jackson beyond the intersection of the two streets.

On the occasion in question the car, on its return trip, went down the decline at a rapid rate of speed, and, when it struck the curve at the intersection of the two streets, it jumped the track, causing the instant death of Glenn.

The plaintiff introduced a witness who testified that the construction of the switch was faulty, in that, it should have been left open for the cars going north over the intersection and closed on the other line, and provision made for manipulating it for cars turning west on Eighteenth street. By this system, such cars would be compelled to approach the switch with more caution and the danger would be greatly lessened.

The defendant's evidence showed that at the approach of the curve it had painted on a post the words, "safety stop", being a direction to all motormen to bring their cars to a stop before going north, or going west on the said curve.

The plaintiff introduced Cortlandt Bacon, who was division superintendent of defendant and had charge of defendant's road on its Jackson street line, and also had charge of its car barn at Eighteenth and Olive streets. He was asked if he had seen either Walker or Glenn on the evening prior to the accident. He stated that he did not. Plaintiff also introduced a witness by the name of Fred Bluski, who testified that he heard Bacon say, "Glenn, go out and get that car, the motorman is drunk."

A witness by the name of Jackson stated that he went to the place where Glenn was killed, at the instance of Bacon, for the purpose of taking Glenn to the home of his brother. He was asked by plaintiff's counsel if at that time and place Mr. Bacon said to Ira Glenn, "I sent Walker out with the car and I thought afterwards I had better send your brother out after it, and I sent him thinking he was able to handle it." The defendant's counsel objected to the question on the ground that it was improper for any purpose, and that Bacon was plaintiff's own witness. The court ruled that the question was proper, and the witness testified that Bacon used the words propounded in the question.

Henry Stonestreet, official stenographer, who took the evidence on a former trial where witness Bacon testified, was called, and the evidence so taken was read to the jury for the purpose of impeaching him.

The plaintiff's evidence tended to show that in the operation of cars on Jackson street it would be much safer if the switch should be so constructed as

to be left open for cars passing north on Jackson street, and closed for passage of cars onto Eighteenth street, going west.

Defendant's evidence tended to show that Bacon, the superintendent, was not present after the crippled car came in, and when Glenn got on the car in charge of Walker; and that both were acting without authority.

There are two counts in the petition. The grounds of negligence alleged in the first count are: First, the negligence of Walker, defendant's employee, in causing and permitting the car to run down the decline with a great speed and into and around said curve, causing the car to jump the track. Second, in negligently causing and permitting Walker to act as motorman on said car when the defendant well knew that he was not a reasonably competent motorman to operate the car, and who was at the time under the influence of liquor, all of which defendant well knew, or by the exercise of ordinary care could have known. Third, that the car was not provided with reasonably safe and sufficient brakes, but on the contrary, was provided with old, dilapidated and insufficient brakes for the purpose, and which refused to properly work when applied or attempted to be applied to the car by the said Walker. Fourth, the defective switch at the curve of Eighteenth street. Fifth, the negligence of said Walker in taking charge of said car when he well knew that he was incompetent to act as motorman; and that he was under the influence of liquor; and that he ran the car down the steep decline of Jackson street and into said curve at a rapid and dangerous rate of speed.

The grounds of negligence alleged in the second count are: First, the defective switch at the intersection of Eighteenth and Jackson streets. Second,

that the car was not provided with sufficient brakes, as alleged in the first count. In this count plaintiff alleges that he was acting as motorman at the time of the accident.

At the instance of plaintiff the court instructed the jury as follows: "The court instructs the jury that all questions of alleged negligence on the part of defendant are withdrawn from the jury, save and except the question of whether or not the switch in evidence was constructed in the usual and customary manner and maintained in a reasonably safe condition under all the facts and circumstances in evidence at the time of the alleged accident, and it is for the jury to determine under all the facts and circumstances whether or not such construction was negligence; and, if so, whether it was the proximate cause of the injury."

In two other instructions the jury were instructed as to the measure of plaintiff's damages.

Plaintiff's fourth instruction reads as follows: "The jury are instructed that all evidence reciting statements made by Mr. Bacon after the accident occurred is withdrawn from the case and is not to be considered by the jury, and the jury are instructed that they are not to consider such evidence in any manner in arriving at a verdict in this case."

At the close of the hearing of plaintiff's evidence defendant asked for a demurrer to his case, and it was renewed at the close of all the testimony, both of which the court overruled.

The jury returned a verdict for plaintiff on the first count for $6000, upon which judgment was rendered. The defendant, failing to obtain a new trial, appealed.

There are many assignments of error, but we think it necessary to consider only some of the most important. It was a flagrant error to permit the

plaintiff to introduce evidence tending to impeach the veracity of Bacon, the defendant's superintendent, whom the plaintiff called to prove that he had ordered Glenn, the deceased, to go out and take charge of the car thereby replacing Walker. The plaintiff's counsel well knew it was not admissible to impeach his client's own witness in that manner. And it is evident that that was not the purpose for which it was introduced, but the real purpose was to give it affirmative effect on the minds of the jury as to whether Bacon had directed Glenn to take charge of the car. And, afterwards, for the purpose of condoning the offense, the instruction was asked and given eliminating the evidence from the consideration of the jury. After having deliberately injected the poison into the minds of the jury, and it having had its natural effect, nothing plaintiff could do in the way of instruction could condone the wrong.

The admission of the evidence of Perdue, who was not shown to be an expert, was improper. He had had no experience in building or operating street or other railroads, and was, therefore, incompetent to testify as to whether the switch in question was or was not a reasonably safe construction under the circumstances. But we do not think the error important as will be perceived from a further consideration of the case. And it was of no consequence on the issue finally submitted to the jury whether or not Walker was a competent motorman and at whose instance he undertook to operate the car. The sole issue submitted to the jury was as to the reasonable safety of the switch, which, it is alleged, was the proximate cause of the injury. We think the evidence tends to show that the only reason why defendant had the switch open for the curve into Eighteenth street was one of convenience, that is, that more cars passed that way than directly north on Jackson street. But in such

matters we are not to be governed by mere convenience, but safety must also. be considered. Whereas it was shown that if a car was in proper working order and the motorman careful in operating it and stopped at the point indicated by the words on the post as the safety stop, there would be no danger, yet, at the same time, it was made to appear, and it is self-evident that if the machinery for regulating the movements of the car was not in proper working order, or that the motorman failed to stop the car at the proper place, and that he ran it down the decline at a rapid rate of speed into the curve, it was liable to jump the track; or if the track was slick so that the brakes could not stop the progress of the car, its rate of speed would increase as it progressed down the decline and into the curve. For these reasons, the admission of the evidence of the witness Perdue was immaterial and not harmful.

However that may be, it seems that the defective switch, if it was defective, was not the proximate cause of the death of Glenn. Had the car been in good serviceable order and managed in a reasonably careful manner, it would not have entered the curve at a rapid rate of speed, and would not have jumped the track, and Glenn would not have been killed. It was the rapid rate of speed with which the car entered the curve that caused it to jump the track. It is admitted that Walker was not a competent motorman, and that he permitted the car to run down the decline at a rapid rate of speed. "A proximate cause in the law of negligence is such a cause as operates to produce particular consequences, without the intervention of any independent unforeseen cause, without which the injuries would not have occurred." [Schwartz v. Railroad, 110 La. 534.] "That negligence is the proximate cause of the injury which sets in motion a train of events that in their natural sequence might,

and ought to be expected to, produce an injury, if undisturbed by any independent or intervening cause.'' [Holwerson v. Railway, 157 Mo. l. c. 231.]

There is no doubt but that cars have been operated on Jackson street through the curve thousands of times in safety. And there can be no doubt but that, if the motorman in charge had kept the car under control as it approached the switch and stopped at the post indicating the place for cars to stop, the car would have passed through the curve in safety.

It is well-settled law that the master is required to furnish the servant with reasonably safe appliances for his work and a reasonably safe place for such purpose. He has the right to conduct his business in his own way provided, that he is not negligent. [Mack v. Railway, 123 Mo. App. 531.] ''The master must use ordinary and reasonable care to provide and maintain safe machinery, tools and appliances with which to do the master's work. But he is not required to furnish absolutely safe appliances.'' [Beebe v. Transit Co., 206 Mo. 419.]

It is true that if the switch on the direct line going north had been left open instead of closed, it would have been absolutely safe under ordinary conditions. Perhaps the Eighteenth and Jackson street line was more in use than the other line, if so, it was a matter of convenience and importance in conducting the business of the defendant as a carrier of passengers.

The contention of the plaintiff that the switch, not being such as was in ordinary use, was evidence that it was defective and was proof of negligence. It is said that the usual and customary manner in which a thing is done amounts to reasonable care, and it is, therefore, contended that that which is not usual and customary is evidence of negligence. We do not understand that the rule is intended to fix this as the

absolute standard of care, and to the effect, that that which is not usual and customary may not be considered reasonable care also.    The rule is not intended to fix responsibility for want of care, but to justify the act if it is performed in the usual and customary manner.    Notwithstanding the switch may not have been constructed and maintained in the usual and customary manner, yet, if its construction and maintenance were reasonably safe, the defendant was not negligent in so constructing and maintaining it. The question, on the admitted facts, was one of law for the court, and the court, upon the issue submitted to the jury, should have sustained defendant's demurrer on the question whether defendant was guilty of the charge of negligence on the ground that the switch was not reasonably safe.

Plaintiff insists that the judgment, in any event, should be affirmed, because of the showing made that the death of Glenn was the result of the negligent acts of Walker, a fellow servant, in operating the car.    But that question was not submitted.    The defendant's contention is that he was not one of its motormen and was not authorized to act as such, which was known to Glenn, and it had the right to have the jury pass upon the question as one of fact. The plaintiff, therefore, is not in a position to rightfully ask for an affirmance upon the issue of fact, because he has precluded himself by asking and obtaining an instruction taking the question away from the jury.    Reversed and remanded.    All concur.