JOSEPH CODY, Respondent, v. JAMES W. LUSK, W. C. NIXON, and W. B. BIDDLE, Receivers of the ST. LOUIS and SAN FRANCISCO RAILROAD COMPANY, Appellants.

Springfield Court of Appeals, December 12, 1914.

1. MASTER AND SERVANT: Injuries to Servant: Pleadings and Evidence Examined. Action for personal injuries received by plaintiff while working as a boiler maker in defendants' shops. Evidence set out and pleadings examined.

2. ————: Servant's Injury: Negligence: Presumptions. There is no presumption of negligence arising from the mere occurrence which resulted in injury to the servant, as there is in the case of a passenger or a stranger.

3. ————: ————: Defective Appliance: Injuries: Presumptions. Where injury to a servant is traced to a defect in a particular instrumentality or appliance being used by the servant in his work, the proof of the occurrence, the defect and its attendant circumstances furnish sufficient proof of actionable negligence.

4. ———: Defective Appliances: Notice, Actual and Construc-- tive. Where an injury to a servant was the result of defects in horses used to support a scaffold and in extensions supporting a motor used in drilling an upright boiler, it matters not whether the defect was in the original construction, in which case the instrumentality having been constructed originally by defend- ants' employees, defendants would be charged with actual knowl- edge, or whether it became defective by long usage without any inspection, in which case defendants would be charged with con- structive notice.

5. ———: Appliances: Master's Duty in Regard to: Continuing Duty. It is the master's duty to use reasonable care in furnish- ing reasonably safe appliances and a further duty devolves upon him to inspect and keep the appliances in a reasonably safe condition as long as they are used.

6. ———: Defective Appliances: Contributory Negligence: When Applicable. A servant is *held* guilty of negligence as a matter of law in selecting a defective appliance out of a large number only in case such defects are so obvious that the use of reasonable care must have led to their discovery.

7. ———: Appliances: Duty of Inspection: Master's Liability. The duty of inspection of appliances furnished by the master and the testing of same to discover defects are originally on the master and not on the servant. Unless this duty of inspec- tion is imposed on the servant, he may rely on the fact that the master has discharged his duty and that the tools and ap- pliances furnished are reasonably safe.

8. ———: Defective Appliance: Contributory Negligence: Action by servant against master for injuries because of al- leged negligence in furnishing unsafe appliances. The servant was at work on a platform supported by wooden horses 11 feet high. He remained on one end of the platform while his helper was moving one end of the horse at the other end a few inches. The scaffold gave way on account of a defect not apparent to plaintiff. In remaining on the platform while the horse was being moved, the servant was not necessarily negligent to such an extent as to prevent his recovery.

9. INSTRUCTIONS: Master and Servant: Defective Appliances: Erroneous Submission of the Question of Negligence. Action by servant for injuries occasioned by the giving away of a scaffold on which the servant was at work. An instruction as to negligence of defendant is examined and *held* too broad and indefinite.

10. MASTER AND SERVANT: Negligence: Method of Work: Custom. To establish negligence against a master something

more must be proven than that the method of doing the work was different from that used by others.

11. **EVIDENCE: Negligence: Custom.** It is always competent to prove custom to negative negligence.

12. **MASTER AND SERVANT: Negligence: Custom: Inference.** The mere fact that the method of the master in doing certain work is not the method used by others in the same business, is not a sufficient reason for inferring negligence.

13. **NEGLIGENCE: Usage: Conformity and Non-conformity To.** Conformity to usage disproves negligence, but non-conformity does not establish negligence. A party charged with negligence may disprove it by showing that the act done or the instrumentality or method used conformed to common custom in the same business; the converse does not hold true.

14. **MASTER AND SERVANT: Negligence: Master's Right to Conduct Business His Own Way Within Certain Limits.** Within the limits of reasonable safety a master has a right to conduct his business in his own way even though another method might be less dangerous.

15. **NEGLIGENCE: Proximate Cause: Definition.** A proximate cause in the law of negligence is that cause which sets in motion a train of events which is their natural sequence might and ought to be expected to produce injury if undisturbed by any independent or intervening cause.

16. **MASTER AND SERVANT: Negligence: Proximate Cause.** Where a servant is injured by reason of the giving way of an insecurely fastened extension to horses supporting an iron rod and motor attached thereto, whereby the platform, also supported by such horses and on which the servant was standing, was caused to fall, the fact that the putting on of the extensions to the horses was made necessary by reason of the increased height of the boiler on which the servant was working due to placing the boiler on end instead of laying it down horizontally does not make the fact of the boiler being so placed on end the proximate cause of the injury. The proximate cause of the injury is the defective fastening of the extension.

Appeal from Jasper County Circuit Court, Davision Number One.—*Hon. Joseph D. Perkins,* Judge.

REVERSED AND REMANDED.

Cody v. Lusk.

*Mann, Todd & Mann* and *W. F. Evans* for appellant.

(1) The demurrer requested by defendants should have been given because plaintiff did not prove any negligence of defendants entitling him to have his case submitted to the jury. (2) The rule of *res ipsa loquitur* does not apply to an action by a servant against the master, and there is no showing by plaintiff of anything except that while he was at work the extension came off and scaffold fell. Hamilton v. Railroad, 123 Mo. App. 619; Haynie v. Packing Co., 126 Mo. App. 88; Klebe v. Distilling Co., 207 Mo. 480; Howard v. Railroad, 173 Mo. 524-531; Oglesby v. Railroad, 177 Mo. 272. (3) There was no evidence either that defendants had any actual knowledge of any defective condition of the extension, nor was there anything to show that such a defective condition had existed for such a length of time that constructive knowledge could have been imputed to defendants. To make out a case, plaintiff must show one or the other of these facts. Wilks v. Railroad, 159 Mo. App. 722; Wojtylak v. Coal Co., 188 Mo. 281; Rowden v. Daniel, 151 Mo. App. 15. (4) There was no evidence to entitle plaintiff to have the case submitted to the jury on the allegation that the method adopted by defendants in doing the work was not a reasonably safe method. Letanovsky v. Shoe Co., 157 Mo. App. 120; Bradley v. Railroad, 138 Mo. 302; Mathis v. Stock Yards Co., 185 Mo. 446; Blundell v. Mfg. Co., 189 Mo. 558; Glenn v. Railroad, 167 Mo. App. 117; Saxton v. Railroad, 98 Mo. App. 501; Strottman v. Railroad, 211 Mo. 270. (5) Plaintiff was guilty of countributory negligence in staying upon the scaffold while it was being moved, instead of getting off on the ground. Moore v. Railroad, 146 Mo. 582; Hurst v. Railroad, 163 Mo. 309; Smith v. Box Co., 193 Mo. 715.

*Fielding P. Sizer* for respondent.

(1) Respondent is not relying upon the doctrine of *res ipsa loquitur* in order to recover in this case, but, on the other hand, we insist that the doctrine does apply as between master and servant, and that if it were true (as alleged by appellants) that the evidence only disclosed the mere facts of the happening of the accident, that even then this case could easily be classed as coming within that class of cases between master and servant, when proof of the occurrence itself shows negligence. Hamilton v. Railroad, 123 Mo. App. 623; Folk v. Schaeffer, 186 Pa. St. 253; Blanton v. Dold, 109 Mo. 74-75; Sackewitz v. Biscuit Co., 78 Mo. App. 151; Johnson v. Railroad Co., 104 Mo. App. 592. (2) The duty to furnish horses and extensions reasonably safe is a prime duty and cannot be delegated to another servant so as to escape liability and that when this is done it is still a prime duty to keep them in repair and a prime duty to properly inspect. Combs v. Constructoin Co., 205 Mo. 367; Ogan v. Railroad, 142 Mo. App. 251-2-3; 1 Labatt on Master and Servant, sec. 159; Gutridge v. Railroad, 105 Mo. 528-526; Tatem v. Railroad, 96 Mo. App. 454; Young v. Railroad, 133 Mo. App. 159-160; Bible v. Frisco, 169 Mo. App. 530; Covey v. Railroad, 86 Mo. 635, 641-642; Denker v. Milling Co., 135 Mo. App. 340, 343-44. (3) Whether there was any direct testimony or not as to the defendant's knowledge of any "defects or insufficiencies" in the extensions or horses, yet as it is the master's positive and continuing duty to inspect, and as we have proved by th eassistant foreman himself, who was immediately over plaintiff, that he could not remember of ever having inspected these horses or extensions, certainly was a showing of negligence and was a sufficient basis for the jury to infer that had he used ordinary. care, could have discovered such defects or insufficiencies in time to have avoided the injury to plaintiff. Covey v. Rail-

road, 86 Mo. 641-642.   (4) Though the appliances and means might be defective, yet if the servant believes, by the exercise of ordinary care, he could safely use them, then he is not guilty of contributory negligence as a matter of law, unless they are glaringly defective. Bible v. Frisco, 169 Mo. App. 531; Gibson v. Bridge Co., 112 Mo. App. 598; Morgan v. Mining Co., 160 Mo. App. 99.   (5) The defect was to some extent a latent one, and therefore it was the positive duty of the master to inspect for such defects, which must be continually performed.   Organ v. Railroad, 142 Mo. App. 251-252-253; 1 Labatt on Master and Servant, sec. 159; Gutridge v. Railroad, 105 Mo. 528-529; Baker v. Railroad, 95 Pa. St. 211; Tatem v. Railroad, 95 Mo. App. 454; Younge v. Fisco, 133 Mo. App. 159-160; Combs v. Const. Co., 205 Mo. 367.   (6) The jury found squarely against the defendant's contention that plaintiff was guilty of contributory negligence in remaining on the scaffold while it was being moved.   Johnson v. Frisco, 164 Mo. App. 623; Johnson v. Frisco, 160 Mo. App. 69.

STURGIS, J.—Plaintiff recovered a judgment for personal injuries received by him while in the employ of defendants, as receivers of the St. Louis and San Francisco Railroad Company, in the capacity of a boiler maker working at defendants' shops in Springfield, Missouri.   His injuries resulted from a fall from the scaffold on which he was working at drilling flexible sleeves from the boiler sheet of a locomotive, using for that purpose a drill operated by electric power.   The locomotive boiler on which he was working had been stripped from the trucks and other machinery and set up on end on the floor in a perpendicular manner, the top being between eleven and twelve feet high.   Part of the work had to be done near the top and in doing this plaintiff used a scaffold made of two "wooden horses" with boards sixteen to twenty feet long extending horizontally from

one to the other, forming a platform on which he stood at his work. These horses were about ten feet high, each formed of two ladders, similar to an ordinary carpenter's ladder, hinged together at the top and spreading at the bottom, with an iron rod near the bottom extending from one to the other so as to keep them from spreading further apart, making a horse on the principle of a stepladder which would stand without leaning against anything. The platform was made of two boards about a foot wide resting on a crosspiece of each ladder or horse and could be made higher or lower by putting these boards on higher or lower crosspieces.

The motor used weighed about one hundred and fifty pounds and was suspended, raised and lowered by means of a chain attached to it and passing over an iron bar made of two inch gas pipe extending from the top of one horse to the top of the other, and, as these horses were not built high enough, an extension to each was made of an upright board, one inch thick and five inches wide and three to four feet long, nailed on each horse with a "V" shaped notch sawed in the top of each extension and the pipe laid in these notches. This horizontal bar supporting the motor was therefore about thirteen or fourteen feet from the floor and the chain passing over it held the motor suspended at one end and a balance weight at the other. The cause of plaintiff's fall and resultant injury was that it was necessary in drilling to have the motor at right angles with the hole being drilled, and to do this to move from time to time by sliding along the floor one of the horses a distance of from two to five or six inches. The plaintiff had a helper in doing his work and, while the helper was moving one of these horses for the purpose just mentioned, the extension thereon gave way letting down the end of the rod supporting the motor, which in turn slided down against the horse, tipping it over and the whole thing collapsed, throw-

ing plaintiff to the floor, one of the boards falling on him and breaking his leg.

The petition, after stating that while plaintiff was working with the boiler placed in an upright position the scaffold fell by reason of the extension giving way, alleges defendants' negligence as follows: "Plaintiff states that his injuries as aforesaid were due to the negligence of the defendants in failing to exercise ordinary care to furnish plaintiff with a reasonably safe place to work, and in failing to exercise ordinary care. to furnish plaintiff with reasonably safe horses and extensions, and in furnishing plaintiff with old and defective and insecure horses and extensions, improperly and insecurely fastened thereto, or extensions too weak and insecure to support the weight of the motor and balance weight, when the defendants knew, or by the exercise of ordinary care could have known of the defective and insecure or too weak condition of the horses or extensions, and in adopting the method of doing said work as above set forth, which was not a reasonably safe method." The answer is a general denial, coupled with a plea of contributory negligence that plaintiff himself selected the horse with the defective and insecure extension from a number of similar ones and that plaintiff voluntarily remained on this scaffold while the same was being moved and adjusted while he could and should have descended to the floor.

The errors complained of are the refusal to direct a verdict for defendants and the giving and refusal of instructions. Of these in their order.

The defendants insist that the doctrine of *res ipsa loquitur* does not apply to an action by a servant against the master, and that nothing showing negligence was proven except the mere fact that the extension board gave way. It is true that there is no presumption of negligence arising from the mere occurrence which resulted in injury to a servant as there

is in case of a passenger or a mere stranger. But where, as here, the injury to the servant is traced to a defect in a particular instrumentality or appliance being used by the servant in his work, then there are many cases holding that the proof of the occurrence and its attendant circumstances fournishes sufficient proof of actionable negligence. Thus, in Hamilton v. Railroad ,123 Mo. App. 619, 623, 100 S. W. 671, it is said: "There is, however ,authority based on the best of reason, showing that the servant's case may be made out by mere proof of the occurrence which caused the injury in those instances where the occurrence itself, without the aid of a presumption, shows negligence. In case of a passenger, as we have seen, the occurrence itself may not show negligence and the presumption comes to his relief. But, in the servant's case, if the occurrence is of that nature, which of itself, shows negligence without the aid of a presumption, he may, as just stated, make a case by showing the occurrence only." Blanton v. Dold, 109 Mo. 64, 74, 18 S. W. 1149) is to the same effect and quotes from Mooney v. Lumber Company, 154 Mass. 407, "that the starting, without apparent cause, of the carriage of a sawing machine, when left at rest, with 'the lever locked which was used to start and stop it,' whereby the plaintiff was injured, constituted evidence to support a finding that there was negligence in the construction or condition of the machine with reference to its reasonable safety." In Stoher v. Railroad, 91 Mo. 509, 4 S. W. 389, where a culvert, over which a train passed after a heavy rain, gave way, the court held that: "The sudden giving away of a part of the structure is, if unexplained, some evidence of negligence in its construction." In Johnson v. Railroad, 104 Mo. App. 588, 592, 78 S. W. 275, where carpenter employees were taking up a floor, using a crowbar over the place where plaintiff, an employee, was working, the court said: "The only evidence is that

it fell and struck plaintiff on the head. There is nothing to show why, or how, it fell. We believe such evidence sufficient to cast upon defendant the necessity of explaining.'' [See also Sackewitz v. Amer. Biscuit Mfg. Co., 78 Mo. App. 114, 151; Shuler v. Railroad, 87 Mo. App. 618; Kelley v. Railroad, 105 Mo. App. 365, 79 S. W. 973.] In this case it is shown that the extension board five inches wide and one inch thick was nailed only to the upper crosspiece of the horse and did not, as in case of some others used there, extend down so as to be fastened to the next lower crosspiece also. Nor was it fastened on with clasps or bolts as was the case with some others used there. One witness, the plaintiff's helper at the time of the accident, who saw it after the accident, said that the cause of its giving way was that ''the nail pulled out of the horse.'' This implies that only one nail was holding it and this one not ''clinched,'' and neither party ventured to ask him directly the number or size of the nail or nails. The broken horse was defendants' property, was left with it and plaintiff was never able to inspect it afterward on account of his severe injury and long stay in the hospital. It was shown that there was no violent movement of or extra weight placed on the extension when it gave way. It did so while being used as it was intended to be used. Under the authorities there is sufficient evidence, in the absence of any explanation by defendants of its cause otherwise, to warrant an inference that this accident was caused by a defective appliance furnished by the master.

In this connection defendants say that even if defective there is no evidence to warrant the jury in finding, as it was required to do, that the defendants had knowledge of the defect or that it existed for such a length of time as to warrant a finding of knowledge. It is shown that these horses with the extension pieces nailed thereon had been in use for a long time

and had never been inspected. It is not shown and it does not matter whether the extension board was originally insecurely fastened or had become so by long use, or both combined. If the defect was in the original construction, then, as it was made by defendants' employees, defendants could be charged with actual knowledge and if, it became so by long usage without any inspection, the jury would be warranted in finding constructive notice. It is not such a defect as would be brought about in a short time from any apparent natural cause.

It is defendants' duty to use reasonable care in furnishing reasonably safe appliances in the first instance and to keep them in that condition so long as they are used. This implies the duty to watch over and inspect such appliances both to see that they are reasonably safe to start with and to keep them in that condition. "In cases such as the present, the duty to inspect and to make ordinary mechanical tests at reasonable intervals is an affirmative and a continuous duty. 'It will not do to say that having furnished suitable and proper machinery and appliances, the master can thereafter remain passive, so long as they work well and seem safe. The duty of inspection is affirmative and must be continually fulfilled and positively performed. Anything short of this would not be ordinary care.' " [Organ v. Railroad, 142 Mo. App. 248, 252, 126 S. W. 191; see also Bible v. Railroad, 169 Mo. App. 519, 530, 154 S. W. 883; Gutridge v. Railroad, 105 Mo. 520, 526, 529, 16 S. W. 943.] If it is proper to hold, as the court did of a chain in the Ogan case and of a rope in the Bible case, supra, that the defendant must take notice that such instrumentalities deteriorate and weaken by usage and heavy strain, why is this not true of the instrumentalities used in this case?

We come now to consider whether plaintiff is shown to have been guilty of contributory negligence

as a matter of law and herewith his duty to make inspections and slight repairs. We cannot agree that plaintiff was necessarily guilty of negligence in selecting out of a number, some good and some bad, a defective wooden horse with which to work. In the first place he testified that he made no selection; that the boiler and these horses were already in place and that the only thing done by him and his helper was to get the boards used as a platform. We think, also, that the principle that a servant is held guilty of negligence as a matter of law in selecting a defective appliance out of a large number applies only to such defects as are so obvious that the use of reasonable care must lead to their discovery. It might apply to one selecting a dull pick or a hammer battered or worn round. But, as we have seen, the duty of inspection and making tests to discover defects is originally on the master and not the servant. Unless this duty of inspection is imposed on the servant, he may rely on the fact that the master has discharged his duty and that all the tools and appliances furnished are reasonably safe. [3 Labatt's Master & Servant, sec. 1270; Labatt's Master & Servant, sections 1330, 1336; Combs v. Construction Company, 205 Mo. 367, 378, 104 S. W. 77.] Plaintiff says he did in this case make use of his eyes and looked at the wooden horse in question and it appeared to be sound and safe. That was all the law imposed on him in making a selection. [Gibson v. Bridge Company, 112 Mo. App. 594, 598, 87 S. W. 3; Yongue v. Railroad, 133 Mo. App. 141, 159, 112 S. W. 985.] The plaintiff denied that any duty of inspection was imposed on him as to these wooden horses. There is no testimony to the contrary. He was not a carpenter and his business was to work on boilers with the tools and appliances furnished him. The evidence shows that repairs of these appliances were usually made at the carpenter shop. Of course, if the defect had been so obvious that a man of his knowledge and

experience must have discovered it by using ordinary care, then it would have been his duty to have discarded the one there at hand apparently for his use and selected another apparently safe, or to have made the necessary repair by driving additional nails in this extension and clinching them or putting on a new extension board or some such means. But that is not this case.

Nor was it necessarily negligence that plaintiff stayed on the platform while his helper was down moving one end a few inches. The plaintiff went to the other end or horse and stood there and there was little, if any, of his weight thrown on the end being moved and none on the iron rod or extension which gave way. Plaintiff said he could and did to some extent steady the iron bar supporting the motor and thereby lessen the danger of an accident. There would have been danger of the motor or boards falling on him from this very accident had he been on the floor assisting to move the wooden horse. All he was required to do was what a reasonably prudent man would do under the circumstances relying on the master to have furnished him safe appliances to work with. Viewed from the hind-sight, his remaining on the platform proved to be the more dangerous in this particular incident, but that is only because the appliances furnished by the master proved defective—a fact not apparent to him and which he was not required to search out. The evidence is certainly not conclusive that he knowingly remained in a dangerous position. [Johnson v. Railroad, 164 Mo. App. 600, 623, 147 S. W. 529; Johnson v. Railroad, 160 Mo. App. 69, 78, 141 S. W. 475; Gordon v. Railroad, 222 Mo. 516, 536, 121 S. W. 80.] We hold, therefore, that the plaintiff made a case for the jury on the negligence of defendants in furnishing the wooden horse with the unsafe and insecurely fastened extension to support the motor and we find no error in the instructions on this point.

We find, however, that the court submitted the case to the jury by plaintiff's instruction on defendants' negligence in another respect, the method of doing the work, as a ground of negligence separate and distinct from the negligence in furnishing a defective appliance, to-wit: "or if you find that the method adopted by defendants was not a reasonably safe method, and by ordinary care defendants could have known that such method was not reasonably safe in time to have avoided injury to plaintiff, then you will be justified in finding the defendants guilty of negligence."

This instruction appears to be too broad and indefinite, giving the jury a roving commission in the field of conjecture. No particular method is pointed out by the instruction as being negligent. We gather, however, from plaintiff's brief and argument, that what claims to be a negligent method of doing the work is that defendants placed the boiler on end in a perpendicular position, thus making it about eleven feet high, instead of laying it down horizontally, making it only about seven feet high; that the perpendicular position alone necessitated the extensions being placed on the horses and the same being moved from time to time as the work progressed. It was shown that placing the boiler in a horizontal position was the method used in two other railroads' shops. Under this evidence, was this method of doing the work a ground of negligence sufficient to warrant a recovery distinct from the defective extension? We think not. In order to establish negligence something more must be proven than that the method of doing the work was different from that used by others. It is always competent to prove custom to *negative* negligence. [Gordon v. Railroad, 222 Mo. 516, 535, 121 S. W. 80; O'Mellia v. Railroad, 115 Mo. 205, 21 S. W. 503; Overby v. Mears Min. Co., 144 Mo. App. 363, 374, 128 S. W. 813.] It would be competent to prove that defendants adopted a

method "less safe" than the usual one (Spencer v. Bruner, 126 Mo. App. 94, 102, 103 S. W. 578), though the less safe method must be one not reasonably safe. Negligence, however, is not inferable from the mere fact that the method used is not that used by others in the same business.   Conformity to usage disproves negligence, but nonconformity does not prove it.   A party charged with negligence may disprove it by showing that the act done or the instrumentalities or method used conformed to common usage in the same business, but the converse of this is not true.   [Glenn v. Railroad, 167 Mo. App. 109, 117, 150 S. W. 1092; Chaffee v. Erie R. Co., 124 N. Y. Supp. 272; 3 Labatt's Master & Servant, sections 946, 949; Chicago & E. I. R. Co. v. Driscoll (Ill.), 52 N. E. 921.]

Whether the boiler was placed on end or laid horizontal, the wooden horses, with the platform and iron supporting the motor, would be used. The only difference is that when horizontal the motor need not be raised quite so high, dispensing with any necessity for extensions or the horses being moved. But, making the horses higher in the first place would also dispense with the necessity for extensions so that negligence might as well be predicated on the use of horses too short for the purpose for which they were being used.   It seems apparent, therefore, that the height of the boiler was not the cause of the injury independent of the defective wooden horse.  If the wooden horse had been constructed of sufficient height without extensions, this accident could not have occurred as it did, as there would have been no extension to give way; and it is apparent that had the extension been sufficiently strong and securely fastened to the horse, the appliance would have been reasonably safe the same as if the horse had been high enough without them. There is no inherent danger in causing a servant to work at a height of eleven feet rather than seven feet; and, given a safe place to work, the increased height

could not be a ground of negligence here.  The same is true of the fact that placing the boiler on end instead of horizontal necessitated moving one of the horses a few inches from time to time.  If the horses had been kept sufficiently substantial, either in the original build or with the extensions, to stand this strain, the accident would not have occurred.  We must keep in mind that within the limits of reasonable safety the master has a right to conduct his business in his own way, even if another method is less dangerous.  [Dickinson v. Jenkins, 144 Mo. App. 132, 128 S. W. 280; Bradley v. Railroad, 138 Mo. 293, 302, 39 S. W. 763; Steinhauser v. Spraul, 127 Mo. 541, 562, 28 S. W. 620, 30 S. W. 102; Sutherland v. Lumber Company, 149 Mo. App. 338, 130 S. W. 40; Fleeman v. Bemis Bros. Bag Company, 159 Mo. App. 593, 141 S. W. 481.]

Nor was the method of doing the work the proximate cause of this injury.  The proximate cause was the defective extension which gave way."  "A proximate cause in the law of negligence is such a cause as operates to produce particular consequences, without the intervention of any independent unforeseen cause, without which the injuries would not have occurred."  [Schwart v. Railroad, 110 La. 534.]  'That negligence is the proximate cause of the injury which sets in motion a train of events that in their natural sequence might, and ought to be expected to, produce an injury, if undisturbed by any independent or intervening cause.'  [Holwerson v. Railway, 157 Mo. l. c. 231."]  Quoted in Glenn v. Railroad, 167 Mo. App. 109, 116, 150 S. W. 1092.  In that case it was held that where a street car, approaching a switch at a street crossing, ran away and became unmanageable through the negligence of the motorman and the defective brakes and thereby ran into a curve of the switch and was derailed resulting in plaintiff's injury, the manner of constructing the switch was not the proximate cause of the injury although it was shown that it would have

been much safer if this switch had been so constructed as to be open for cars running straight ahead on that street instead of curving to the cross street. The court said: "Had the car been in good serviceable order and managed in a reasonably careful manner, it would not have entered the curve at a rapid rate of speed, and would not have jumped the track, and Glenn would not have been killed. It was the rapid rate of speed with which the car entered the curve that caused it to jump the track." So here, if the extension to the wooden horse had been in "good serviceable order," this accident would not have happened. In Saxton v. Railroad, 98 Mo. App. 494, 502, 72 S. W. 717, the court held that where a person was caused to fall in alighting from a slowly moving train by reason of a sudden and quick jerk thereof, the starting of the train before such person had time to get off was not the proximate cause—that the sudden quick jerk was the proximate cause. The court said: "If nothing else except the slow moving of the train before he had time to leave it had occurred, the conclusion is irresistible that the accident would not have happened. The failure to hold the train, at most, did no more than to furnish the condition, or give rise to the occasion, by which the injury was made possible." [See also Strottman v. Railroad, 211 Mo. 227, 270, 109 S. W. 769.] It seems clear that there was nothing inherently dangerous in causing plaintiff to work three or four feet higher than he would if the boiler had been placed horizontal; nor in making the horses higher by extensions; nor in making it necessary to move one end of the scaffold a few inches from time to time; providing always that plaintiff had safe appliances on which and with which to work. His injury must be attributed solely to negligence in not furnishing safe appliances as the proximate cause. It results that the method of doing the work should not have been submitted as a ground of

negligence. Defendants' refused instructions "D" and "F" should have been given.

Because of these errors, the cause is reversed and remanded.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.