TROTH, *Appellant,* v. NORCROSS *et al.*

### Division Two, October 17, 1892.

1. **Negligence**: ELEVATOR: PERSONAL INJURIES. In an action for personal injuries caused by an elevator, the negligence charged as the ground of recovery was that defendants "failed to provide suitable and proper rules for the running and management of said elevator, whereby plaintiff could have been warned of its descent, and in permitting it to descend on plaintiff without notice or warning." It was not averred that defendants had any authority or control over the elevator. *Held,* that the plaintiff was not entitled to recover.

2. ———. Negligence can be founded only on the neglect of some duty.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Sherry & Hughes* for appellant.

(1) The master and servant do not stand upon an equal footing, even when they have equal knowledge of the danger. The position of the servant is one of subordination and obedience to the master, and he has the right to rely upon the superior knowledge and

skill of the master. The servant is not free to act upon his own suspicions of danger. *Shortell v. St. Joseph*, 104 Mo. 120; *Keegan v. Kavanaugh*, 62 Mo. 230; *Stephens v. Railroad*, 96 Mo. 209. (2) Mallon was defendant's vice principal, and not the plaintiff's fellow servant. *Gormley v. Iron Works*, 61 Mo. 492; *Whalen v. Church*, 62 Mo. 326; *Cook v. Railroad*, 63 Mo. 397; *Stephens v. Railroad*, 96 Mo. 229; *Moore v. Railroad*, 85 Mo. 588. (3) Mallon's acts and words were an assurance to the plaintiff that it was safe for him to work where he was directed to go, and he had a right to assume that the elevator had been secured; at least, it was a question for the jury, and not for the court. (4) The fact that a person injured had previous knowledge of the danger is not conclusive evidence of negligence on his part. It is a fact to be submitted, with other evidence, to the jury, and in an action to recover damages for an injury caused by such defect it is only necessary for plaintiff to show that he exercised ordinary care to avoid the accident. A strong case in point is the case of *Huhn v. Railroad*, 92 Mo. 440; *Flynn v. Railroad*, 78 Mo. 195; *Conroy v. Iron Works*, 62 Mo. 35; *Porter v. Railroad*, 60 Mo. 160; *Dale v. Railroad*, 63 Mo. 455; *Stoddard v. Railroad*, 65 Mo. 521; *Snow v. Railroad*, 8 Allen, 441; *Patterson v. Railroad*, 76 Pa. St. 393; *Hanley v. Railroad*, 82 N. Y. 370; *Huddleston v. Machine Shops*, 106 Mass. 282; *Ford v. Railroad*, 110 Mass. 240; *Lawless v. Railroad*, 136 Mass. 1. (5) "The primary duty of the servant is obedience. He naturally looks to his employer for the observance of all reasonable and proper precaution for his safety." *Keegan v Kavanaugh*, 62 Mo. 232. (6) The fact that an employe is directed by his superior in charge to do an act at a time and under circumstances as that a person would reasonably apprehend danger would not justify his disobedience of such orders,

and obedience is not negligence. *Fransden v. Railroad*, 3 Iowa, 372; *Patterson v. Railroad*, 76 Pa. St. 389; *Le Clair v. Railroad*, 20 Minn. 9. (7) If the master or another servant standing toward the injured servant in the relation of a superior, orders the servant into a place of danger, and he obeys and is injured, the law will not charge him with contributory negligence. *Miller v. Railroad*, 12 Fed. Rep. 600; *Miller v. Railroad*, 17 Fed. Rep. 67. (8) "The master is bound to the servant to supply the latter with proper materials for work, and to surround him with such guards as will enable the work to be safely performed by the servant. If through the employe's negligence in this respect the servant is injured the master is liable to the servant to make good the damages." Wharton on Negligence, sec. 720.

*Warner, Dean & Hagerman* for respondents.

GANTT, P. J.—This is an action for personal injuries. Plaintiff was in the employment of defendants, who were partners and contractors for some of the work in the erection of the New York Life Insurance Company's building, Ninth and Wall street, Kansas City, Missouri.

The petition alleges that plaintiff was in the employ of defendants as a laborer on this building; "that while so engaged on the fourteenth of May, 1888, he was ordered by the foreman of defendants, whose orders he was bound to obey, to place a chain around an iron beam reaching across the elevator way in the fifth story of said building; that, while attempting to place said chain around said iron beam, the elevator was negligently, carelessly, and without notice or warning to plaintiff, caused and permitted to descend from the sixth story of said building, upon the head

and shoulders of plaintiff, whereby he was permanently injured; that he was greatly bruised and mangled, solely on account of the negligence of defendants, *in failing and omitting to provide suitable and proper rules* for the running and management of said elevator whereby plaintiff could have been warned of its descent, and in permitting it to descend on plaintiff without notice or warning." ·

The damages were laid at $20,000.

The answer was: *First.* General denial except the partnership; *second*, contributory negligence. Then as follows:

"*Third.* The defendants further state that at the time of the alleged injuries to the plaintiff, and for a long time prior thereto, he knew that the elevator was constantly ascending and descending the building referred to, and that he entered and continued in the service of defendants with full knowledge thereof, and assumed all risks incident to the moving of said elevator, thereby waiving any claim for any damage which might result to him from the said elevator while he was in the employ of defendants, and, therefore, he cannot maintain the action.

"*Fourth.* Defendants further state that the plaintiff, while in the service of the defendants at the time complained of, knew that the said elevator was running, and, by the exercise of ordinary care on his part, could have avoided being struck by the same."

The reply was denial of contributory negligence and general denial of all matter pleaded in third and fourth counts of defendants' answer.

The plaintiff to sustain the issues, on his part, testified in his own behalf to the effect that he was a man twenty-four years of age. He was a stationary engineer by occupation; he was employed April 3, 1888, to work on the building, by the assistant superintend-

ent; had been at work in the building about six weeks when hurt. He was taken to one Mallon, as his boss, and told to obey him. On the morning he was hurt, Mallon sent him to the basement for a chain. When he returned, he found Mr. Mallon trying to fasten a guy rod to the iron beam in the elevator way. Mallon said to him: "I can't reach it, come over and help me put it on." Mallon was sitting on the back end of the beam that ran up the side of the elevator shaft, trying to put the chain on. When Mallon called him, plaintiff to use his own language, "walked over to where Mallon was working and got down and set straddle of the beam. * * * And about the time I got down they let the elevator down and hit my head and shoulders and mashed me down, and bruised my head and shoulders. * * * There was no rule or regulation that I know of about running the elevator, *except there was a man* at the top and one at the bottom, *ringing an electric bell before they started down.*"

The elevator weighed five hundred to seven hundred pounds. It passed from top to bottom in a few seconds. It was run by an engine in the basement. *When it was at the top and they wanted to go down, they would ring a little bell and the engineer would draw that out and it would unwind on the drum.* The space back of the elevator on this iron beam was just large enough for a man to stay there by crouching close to the wall, about twenty inches. Mallon was in no danger where he sat. When plaintiff was struck, he fell over into Mallon's lap and was held by him until help came. He testified that the elevator had been running up and down that morning before he was hurt. As a rule, it ran every three or four minutes. It moved very rapidly. He knew how it was operated and knew they would drop it, when through up above him. Mallon did not tell him that the elevator was not running.

Mallon gave no information about the elevator; it had been running all the morning. Plaintiff did not inquire about the elevator. He presumed everything was all right. *"I did not stop to think."* It would take from two to five minutes to adjust the chain, and the elevator was running every two or three minutes. He knew the elevator must strike him if it came down, but he assumed that it wouldn't come down, because Mallon was working there and called him to help him. *"Mallon had nothing to do with running the elevator."*

Patrick Hughes, another witness for plaintiff, testified that he had worked at the same work in this building, fastening guy rods. "They were fastened behind the elevator. There was a space behind the elevator something like two feet. The guy rod is fastened by a chain put around the iron beam around the elevator. You get in behind the elevator to fasten the chain." *He did not know what necessity there was for any person getting where the elevator was going up and down to fasten the chain.*

Under this evidence the court sustained a demurrer to the evidence. Plaintiff has appealed.

There is no allegation in the petition that these defendants had any authority or control over the elevator in this building. It is only averred that plaintiff was working for them as a laborer, and he testifies they were contractors on the New York Life Building, but we are left entirely to conjecture as to the extent of their contract. It is disclosed in evidence that it was a building of ten stories. It would appear that in the erection of a building of such proportions there might be many different contractors, some to do one portion of the work and some another. The evidence is clear that Mallon, plaintiff's immediate boss or foreman, had no control whatever of the elevator, and plaintiff knew this. Without averring then or proving

that defendants were in any degree responsible for the proper management of the elevator or had any right to prescribe rules for its management and running in the performance of their contract, plaintiff confined his right to recover solely to defendants' negligence in not prescribing rules for the management of the elevator. Negligence can only be predicated upon the neglect of some duty.

It was incumbent upon the pleader to state what relation defendants bore to the elevator in order that the court could determine whether it was their duty to prescribe rules for its management. For aught that appears upon this petition and evidence the elevator may have been put in the building by another contractor, and after construction its management might have been confided to servants of the owners of the building; and defendants may not have had the right to transport either men or material upon it nor to interfere in the slightest manner with its control.

The evidence only discloses that Mallon and his gang were "*the derrick gang.*" It would seem to have been their duty to make the derrick secure, fasten the guy ropes and move the derrick, if necessary, and from the fact that plaintiff was sent from the fifth story to the basement for a chain and climbed the stairways back, instead of riding on the elevator, which was constantly ascending and descending every two or three minutes, we not only cannot presume defendants had any connection with the elevator, but the reverse would seem to be true. In the absence of some averment showing some such relation to this elevator, that the law would cast upon them the duty of regulating its running, we must hold this petition insufficient and that it states merely a conclusion, without any basic facts to sustain it.

There are cases in this state that hold a general allegation of negligence sufficient, but an examination of those cases will show that in every instance the general charge of negligence is connected with other allegations of fact that clearly show the relation of the defendant and its breach of duty.   As in *Schneider v. Railroad*, 75 Mo. 295, it was distinctly averred that the defendant was the owner of and operated the railroad, that it carelessly and negligently ran and managed its locomotive engine and cars on its railroad, etc.

In that case the fact of ownership from which certain legal duties and obligations flowed was stated, and so also in *Palmer v. Railroad*, 76 Mo. 217, and *Mack v. Railroad*, 77 Mo. 232, but in the case at bar. there is nothing in the petition or evidence that shows or tends to show that defendants were the owners of the elevator, or were the contractors for constructing it, or by virtue of their contract with the owners of the building had any right to manage or control it; and the negligence being confined to the management of the elevator alone the court properly sustained the demurrer to the evidence on this ground alone and it becomes unnecessary to discuss the other questions in the case, and the judgment of the circuit court is accordingly affirmed.