## DE KALB ANDRUS, Respondent, v. BRADLEY-ALDERSON COMPANY, Appellant.

**Kansas City Court of Appeals, March 5, 1906.**

1. **LANDLORD AND TENANT: Repairs: Contract.** The landlord is under no obligation to repair the leased premises unless he has contracted so to do, and is not liable for injuries resulting from non-repair.

2. ———: ———: **Negligence: Liability.** A landlord allowed his tenant the use of an entire floor together with elevator service. The building had six floors, some used by the landlord and others by various tenants. The landlord maintained an elevator for the use of all the tenants and himself. Defendant tenant's servant was injured by the negligent placing of a corner post in the elevator well. *Held*, that it was the landlord's duty to maintain the post and not the defendant tenant's.

3. ———: ———: ———: **Pleading.** The petition alleged that the plaintiff fell into the shaft opening by reason of the elevator gate giving way through insecure fastening of the post in which it worked. *Held*, plaintiff could not recover because of an insufficient guard-rail around the elevator well.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale*, Judge.

REVERSED.

*Warner, Dean, McLeod, Holden & Timmonds* for appellant.

(1) The Bradley-Alderson Company, as the plaintiff knew, had no control over the elevator, the machinery connected with it, the shaft or the safety gates, and was therefore, as the plaintiff knew, without power to alter, change or repair any of the parts thereof. Having no control, under the law, it was under no duty to make repairs and alterations. McGinley v. Trust Co., 168 Mo. 257; Roddy v. Railroad, 104 Mo. 234; 1 Labatt on Mas-

ter and Servant, p. 362; Troth v. Norcross, 111 Mo. 630; Channon v. Sanford Co., 70 Conn. 573, 41 L. R. A. 200; Whallon v. Elev. Co., 31 N. Y. 174; Hughes v. Gas Light Co., 168 Mass. 395, 47 N. E. 125; Moynihan v. Cement Co., 168 Mass. 450, 47 N. E. 425; Hardy v. Sheddon Co., 78 Fed. 610, 37 L. R. A. 35; Kirk v. Sturdy, 187 Mass. 87, 72 N. E. 349; DeTarr v. Brewing Co., 62 Kan. 188; 61 Pac. 689.    (2)    The same principle is applied in determining the responsibility of a master for the negligence of a servant.    The test is the control over the servant at the time in question.    Garven v. Railway, 100 Mo. App. 619; Hilsdorf v. St. Louis, 45 Mo. 98; Smith v. Railroad, 85 Mo. 418; Byrne v. Railroad, 61 Fed. 605; Atwood v. Railroad, 72 Fed. 447; McGinley v. Trust Co., 168 Mo. 257.

*Reed, Yates, Mastin & Howell* for respondent.

(1)    Where there is no agreement to keep leased premises in repair, the landlord is under no legal obligation to his tenant to make repairs.    This is a proposition too well established in this State to require the citation of authorities to sustain it.    Among many other cases this rule is declared in Via v. Wells, 17 Mo. 232; Rogan v. Dockery, 23 Mo. App. 313; Burns v. Fuchs, 28 Mo. App. 279; Little v. McAdaras, 38 Mo. App. 187; Ward v. Fagan, 28 Mo. App. 116; Ward v. Fagin, 101 Mo. 669; Deutsch v. Ables, 15 Mo. App. 398.    (2)    And it is further held that the tenant even, under those circumstances could not recover from the landlord for failure to keep the premises in repair, if injured by reason thereof.    Ward v. Fagin, 101 Mo. 669; Wehrman v. Priest, 12 Mo. App. 577.

ELLISON, J.—Plaintiff, who was an employee of defendant, was injured while in performance of his duties.    The injury was caused by his falling down an elevator shaft.    He sued the defendant for the damage received and prevailed in the trial court.

It appears that the M. Rumely Company owned a large building in Kansas City consisting of six stories and a basement. That it reserved to its own use the basement and the first and sixth floors, and that it rented the remaining rooms and floors to various parties, among them this defendant, who occupied the entire third floor, in which it stored buggies and wagons. The operative part of the written contract of renting was that "we will allow you the use of one entire floor, 66 by 117, together with elevator service, use of shipping dock, also track for loading and unloading cars, at rate of $100 per month." There was a large elevator in use, running from basement to top floor, and it was used in common by the Rumely company and the various tenants, including the defendant. The elevator structure included gates on each floor, which could be caused to raise as the elevator proper would come to a floor and would close as it passed on. The structure holding these, and in which they worked, was composed of four posts extending from floor to ceiling, one at each corner of the shaft. A gate was at each end of the shaft (it being longer than wide) and they were held in place by grooves in the posts, in which they worked up and down. The post at the southeast corner, by neglect or oversight was not fastened firmly to the floor when the building was erected. This condition, while not such as to be noticed by casual observation, could have been discovered by inspection. It had not been seen by defendant, or observed by any of its servants, including the plaintiff. The Rumely company's servants operated the elevator exclusively. Defendant's principal place of business was not at this building, but it sent plaintiff and other employees almost daily to the building to get out buggies that were wanted. On the day plaintiff fell into the shaft, he was in the act of moving some buggies, or parts of them, on a truck and it became necessary for him to make a turn close to the southeast corner post. The space for a turn was limited on account of

the buggies being near, and as plaintiff was in the act of making the turn, his back or shoulder pressed against the post and gate, and the post, being insecure at the foot, moved sufficient to cause the gate to come out of the groove and swing in over the shaft, when plaintiff, thus left without support, lost his balance and fell thirty feet below. The foregoing is not so complete a statement of the facts connected with the cause of plaintiff's falling as made by the parties, but it will suffice for a full understanding of the law, which we deem applicable to the case.

The real questions for decision on the foregoing facts are, Who was in control of the elevator, and whose duty was it to keep it in such repair as to be reasonably safe? It is familiar law that a landlord is under no obligation to repair leased premises unless he has contracted to do so, and he is therefore not liable for injuries resulting from non-repair. In such instances, the tenant would be liable to all those to whom he owed a duty to maintain a reasonably safe place.

In this case, the defendant, as tenant, did not lease the elevator; and from the nature and subject-matter of the contract of leasing, was not and could not, as tenant, have been in control of it. The elevator was maintained by the Rumely company for the common use and benefit of all the tenants, and while no mention is made of that fact in the lease itself, yet the surrounding facts and circumstances may be taken into view in order to give such lease a proper and an intelligible interpretation. [Leonard v. Railway, 54 Mo. App. 293.] The thing rented to defendant by the Rumely company was the third floor and the use of the elevator was but a mode of getting into and out of the place rented. The duty to repair implies a right to control, and it would be absurd to say that the defendant, as tenant, of one floor, was in control of the elevator, which furnished service for six floors. One person might think the mode of operating the gates to this elevator by

grooves cut in upright posts was improper and unsafe, yet would it be supposed that he had a right, or that it was his duty, to change the structure? The control of each tenant, with his own peculiar ideas, would have meant much confusion and, in fact, no control.

In McGinley v. Alliance Trust Co., 168 Mo. 257, there is an interesting, instructive and well-considered opinion of the Supreme Court written by Judge VAL-LIANT, which directly supports what we have said. That case concerned a building commonly called "flats," containing several different apartments rented to different tenants, and had porches and stairways in the rear for use, as mode of access, of all the tenants. A stairway was out of repair, whereby a young daughter of one of the tenants fell to the ground. It was held that the control and duty of repair was with the landlord and not the tenant. In that case, as in this, there was no provision in the lease making it the duty of the landlord to repair, but it was shown that the landlord was necessarily in control and that he maintained the stairway for the use in common of all the tenants; in short, that, while the use of the stairway was vouchsafed to each tenant, possession and control was in neither, but remained with the landlord. That case only differs in degree from the one in hand, and that difference is in defendant's favor. For, in that case, the landlord was not present in manual occupancy of the porches and stairway, while here the Rumely company was in the possession, control and actual operation of the elevator. The same principle, so far as concerns the question of control of that which is the subject of the negligence charged, is stated by Judge GANTT in Troth v. Norcross, 111 Mo. 630. The great weight of authority will be found to uphold the rule as announced by our Supreme Court. [Channon v. Sanford, 70 Conn. 573; Hughes v. Malden Gas Co., 168 Mass. 395; Moynihan v. King's Cement Co., 168 Mass. 450; Kirk v. Sturdy, 187 Mass. 87; 1 Labatt on Master and Servant, 362.] And we find nothing in

the cases cited by plaintiff, including Ahern v. Steele, 115 N. Y. 203, which we regard as opposed to the point which we here decide.

It is a part of plaintiff's contention that the corner posts, in which the elevator gates were secured and in which they worked, as already stated, were a part of the structure about the shaft-opening, which prevented persons walking into it; and from that, the inference is drawn, and more or less directly asserted, that it was defendant's duty to keep it in repair. But that is not the case made by the evidence. The plaintiff did not get hurt by reason of an insufficient protection to the elevator-opening. He received his injuries by reason of an insecurely fastened and constructed elevator gate, over which, as we have already shown, defendant had no control. The allegation in his petition is that he fell into the shaft-opening, not by reason of an insufficient guardrail around it, but that the elevator gate gave way by reason of being "attached" to the insecurely fastened post in which it worked.

The defendant's demurrer should have been sustained. The judgment is reversed. All concur.