HARRY K. POWELL, Respondent, v. ALFRED H. WALKER, and JOSEPH W. O'BYRNE, Composing the Firm of WALKER-O'BYRNE ELECTRICAL COMPANY, Appellants.

Springfield Court of Appeals, January 13, 1917.

1. PERSONAL INJURIES: Fall From Ladder: Review of Evidence. Action for damages on account of personal injuries sustained by plaintiff who fell from a ladder while in the employ of defendants, the ladder not belonging to defendants nor being under their control nor in their possession. Evidence reviewed and considered insufficient to allow a recovery.

2. MASTER AND SERVANT: Appliances: Duty of Master as to. A master must use ordinary care to furnish for his servant reasonably safe appliances with which to work.

3. ————: ————: Right of Servant to Rely on Master's Inspection. A servant has a right to rely upon the presumption that the master has properly inspected the appliances he furnishes the servant with a view of ascertaining their sufficiency for the task they are reasonably supposed to be put to, the sufficiency being that the appliances be reasonably safe when used in the exercise of ordinary care in the scope of the servant's employment and where the appliances are not inherently dangerous.

4. ————: ————: When Appliances are not the Property of Defendant Nor Under His Control. Where the appliances which the servant is ordered to use are not the property of the master nor in his possession nor under his control and are not such that he

can be presumed to have inspected with a view of ascertaining their sufficiency, the presumption that the master has performed this task does not obtain.

5. ——————: ——————: **Use to Which Appliances are Put.** A master will not be held liable for injuries to a servant caused by putting a severer strain upon an appliance he has furnished than was within the contemplation of the master and servant when the former put it into use.

6. ——————: **Injuries to Servant: Where Two or More Causes Appear Servant Must Show What.** Where there are two or more causes to which an injury may be attributed for only one of which the master is liable, the injured servant must introduce evidence from which an inference can be reasonably drawn that it was the cause wherein the master was negligent that was the proximate cause of the injury. And the jury is not permitted to act on conjecture.

Appeal from Greene County Circuit Court. Division Number One.—*Hon. Guy D. Kirby,* Judge.

REVERSED.

*Sebree & Orr* for appellants.

*J. T. White* for respondent.

FARRINGTON, J.—The plaintiff recovered a judgment for $300 on account of personal injuries sustained by reason of alleged negligence on the part of the defendants by whom he was employed at the time of his injuries.

The petition, after alleging that plaintiff was in the employ of the defendants, pleads that he was sent to hang some electrical fixtures which he took with him from defendant's place of business in the city of Springfield to the editorial room of the Springfield Missouri Republican in the Republican Building, and that the defendants furnished him a stepladder with which to do his work which was old and weak and rickety and unsafe, and that the defendants therein were negligent in respect of their duty to him. A further ground of negligence pleaded is that the place in which plaintiff was sent to stand upon this stepladder was where many

persons were crossing the room and were likely to push against the ladder while plaintiff was upon it doing his task. Further, that it was unsafe and dangerous to hang fixtures without a helper to hold and protect the ladder and prevent it from toppling, and that defendants were negligent in that they failed in the duty they owed him to furnish a helper.

The answer was a general denial, coupled with a plea of assumption of risk and contributory negligence.

I. The judgment must be reversed because under the most favorable view of the plaintiff's evidence there fails to appear a neglect of any legal duty owing by defendants to the plaintiff.

Plaintiff testified that he was twenty-one years of age, had worked in this line of business of hanging electrical fixtures, wiring, and the like, for about three years, and had been in the employ of the defendants about three weeks doing this line work in residences where the ceilings were about nine feet high; that in such work he was a helper, and that the duty of a helper was to go with a journeyman and to hand him the materials to be worked with and to stay at the bottom of the ladder to steady it and keep it from toppling over. He says that he had done this line of work himself. He further testifies that he was told by one of the defendants to take some electrical fixtures from the shop and to go to the editorial room of the Republican Building and take down the fixtures that had been placed there by the defendants some time before and replace them with the fixtures taken along; that he and one of defendants looked about the shop for a stepladder, but finding that they were all in use and that none was there, the defendant sending him told him there was a stepladder at the Republican Building which they had used when they had done the work there before, and plaintiff was told to get that ladder and use it in taking down the old fixtures and putting up the ones he was taking with him. Plaintiff went to the editorial room of the Republican Building and asked one of the employees there for a ladder and was told to go back to

the composing room where he would find one.  He
found the stepladder, brought it to the editorial room,
took down one of the fixtures, and then ascertained
that the new fixture would not fit in the hole in the
ceiling that the old one came ont of, and saw that the
use of a drill hammer was required.  The drill hammer
weighed fifteen or twenty pounds, and was operated
by placing it on the shoulder while standing on the
ladder and drilling the hole larger for the reception of
the new fixture.  Plaintiff then went back to the de-
fendants' place of business and secured the drill.  He
saw one of the defendants when he went back but made
no mention of the necessity to use the drill hammer,
his excuse being that the defendant was busy with a
customer.  He returned to the place where he was doing
his task, drilled the hole larger and put up the new
fixture.  It was then noon and he left his work and
went by the shop and on to dinner, but did not see
either of his employers.  Coming from dinner, he went
back to the shop and looked for another stepladder,
because, as he said, the one he was working with was
"walking" about on the floor as he was doing his work
and that he didn't consider it exactly safe.  Neither of
his employers was at the shop at the time of this visit.
He resumed his work, and while on the ladder drilling
the second hole larger, his attention was called to the
rickety and unsafe condition of the ladder by Mr.
Barde, one of the editors employed in that room, to
which the plaintiff replied (according to Barde and the
plaintiff) that he had life insurance. · While he was on
the ladder drilling this second hole, a telephone in the
room rang and one of the reporters who was talking
with Mr. Barde started to the telephone and in doing
so was required to pass the stepladder.  The reporter's
overcoat caught on something which pulled the ladder
and caused it to begin to topple.  The force that the
reporter's overcoat exerted on the ladder is shown by
the fact that a hole was torn in the coat where it caught
on the ladder.  While rocking back and forth from this
pull that had been made on the ladder by the reporter

in catching his coat, the plaintiff undertook to steady the ladder and it broke and the leg of the ladder broke and plaintiff with the ladder and drill fell to the floor, breaking his wrist and otherwise injuring him. The evidence of the plaintiff is that he was required while using the ladder in doing this work before it broke with him to get down three or four times and tie it to keep it from "walking" and swaying.

The uncontroverted testimony, put in by the plaintiff, is that it was not the duty of the defendants to furnish him with a helper to stand at the bottom of the ladder to steady it unless he (the man on the ladder) thought it was necessary to have a helper and asked for one. In other words, the whole testimony is that the man who is to work on the ladder determines for himself whether under the circumstances and surroundings it is necessary to have a helper to steady the ladder. In this case there is no contention made and in fact it is admitted that plaintiff did not ask for a helper. In this connection, plaintiff testified positively that had the reporter not run against this stepladder and started it to rocking it would not have turned over and he would not have been injured. There can be, therefore, no other conclusion than that it was error to have submitted the question in the principal instruction whether the defendants were negligent in failing to furnish a helper, because, as before stated, plaintiff's own testimony shows that the duty to furnish a helper never arose for the reason that he—the man to work on the ladder—never demanded one; and if a failure to furnish a helper in order to guard the ladder was a contributing cause of the injury, that failure was the negligence of the plaintiff in not calling for a helper, and therefore his own negligence in this respect would bar a recovery.

II.  Now, did the plaintiff's evidence show a liability against the defendants on the charge that they had negligently furnished him this stepladder on which to do the work? We think not, for the following reasons:

The well known rule applies, of course, as between master and servant that the master must use ordinary care in furnishing reasonably safe appliances with which his servant is to work; and in this case, on this question, if the ladder on which plaintiff was working had belonged to and been furnished by the defendants and was one used in their business for that purpose we are not prepared at this time to say that there would not have been liability for furnishing a ladder in the condition in which this one according to the evidence appears to have been, this because the servant has a right to rely upon the presumption that the master has properly inspected the appliances he is furnishing with a view of ascertaining their sufficiency for the tasks they are reasonably supposed to be put to, the sufficiency of course being that they be reasonably safe when used in the exercise of ordinary care in the scope of the servant's employment and where the appliances are not inherently dangerous. But where the facts appear, as they do in this case, that the appliances which the servant is ordered to use are not the property of the master nor in his possession or under his control, and are not such that he can be presumed to have inspected with a view of ascertaining their sufficiency, then the presumption that the master has performed that task does not obtain. Here, all that is shown is that one of the defendants told the plaintiff to put up these fixtures and that he would find a stepladder at the Republican Building on which he could do the work. It is in evidence that at some past time, the exact time is not fixed—whether a day or a week or a year or longer before—the defendants in working at the Republican Building had used a stepladder in doing electrical work. Even admitting there is room for a proper inference (and it is very doubtful if the evidence would warrant such an inference) to be drawn that the ladder which the plaintiff actually procured with which to do this work was the one which the defendants had done work at some time in the past and was the one that defendants had in mind, yet there is no liability for this de-

fect in the ladder because by force of the very circumstances surrounding the order to use it the plaintiff knew that this ladder did not belong to the defendants and that defendants did not know, or at least plaintiff did not show that defendants had occasion to inspect or see the ladder at any fixed time before plaintiff was ordered to use it; he knew there was no duty on the defendants to know about the condition of that ladder nor any reason for the defendants to keep the ladder in repair which belonged at the Republican Building, and with these facts existing the presumption of relying on the master furnishing him a safe appliance vanished.

The appellants, among others, cite the following authorities to support their contention that where a master has one of his servants use a place or an appliance which belongs to some one else and which is not under the control and management of the master, under these circumstances there is an exception to the general safe place and appliance rule.    [Andrus v. Bradley-Alderson Co., 117 Mo. App. 322, 93 S. W. 872; Troth v. Norcross, 111 Mo. 630, 20 S. W. 297; Moynihan v. King's Windsor Cement & Dry-Mortar Co. (Mass.), 47 N. E. 425; Kirk v. Sturdy (Mass.), 72 N. E. 349; Sykes v. Railroad, 178 Mo. 693, 77 S. W. 723; Dixon v. Western Union Tel. Co., 71 Fed. 143; Whallon v. Sprague Electrical Elevator Co., 37 N. Y. Supp. 174; 3 Labatt's Master & Servant (2 Ed.), secs. 1071 to 1073 inclusive.] In the authority last cited, the commentator recognizes the existence of a conflict of authority on the question of holding the master liable where he sends his servant to use an appliance or to work in a place which is not under the master's control, and some of the cases therein cited holding that the master is not liable have been cited with approval by our Missouri courts.    However, the case at bar does not require us to go to the length to which some of the cases which have been so cited with approval have gone as the facts hereinbefore set out show that the servant here has failed to bring home actual knowledge of the defective condition of the stepladder to the master when he sent

the servant to work upon it; and his evidence further fails to fasten constructive notice of the condition of this ladder on the defendants for the reason that the plaintiff knew when he was sent to get the stepladder and got it that it did not belong to the defendants and that therefore there had been no occasion or duty on defendants' part to have inspected it or kept it in repair.

III. Again, the plaintiff's evidence in this case clearly shows that it was contemplated by the defendants and by him that his work would require him to merely get on a ladder for the purpose of taking down the old fixtures and screwing in the new ones, and that it would take but a short time and be but a temporary job, and that neither of the parties contemplated when the order was given that it would require the stepladder to be used to stand upon by plaintiff while handling a fifteen or twenty pound drill and exerting the pressure necessary to operate such drill in making a larger hole in the ceiling. And admitting that the defendants were required to furnish a reasonably safe stepladder (borrowed under the facts of this case) to take down the old and put up the new fixtures, it is not shown that this ladder was not sufficiently safe with which to do that work. It is declared that the master's obligation as to furnishing instrumentalities is that they be reasonably safe for the performance of the work in contemplation in the manner contemplated. [3 Labatt's Master & Servant (2 Ed.), sec. 921.] And the master will not be held for injuries caused by putting a severer strain upon the appliance than was within the contemplation of the master and servant when the former put it into use. [Id., sec. 1047.]

IV. There is another rule governing negligence cases which the judgment in this case violated and that is where there are two or more causes to which an injury may be attributed for only one of which the master is liable, the injured servant—the plaintiff—must introduce evidence from which an inference can be reasonably drawn that it was that cause wherein the master

was negligent that was the proximate cause of his injury; the jury will not be permitted to act upon conjecture. [Coin v. Lounge Co., 222 Mo. l. c. 508, 509, 121 S. W. 1; Lorton v. Railroad, 159 Mo. App. l. c. 565, 141 S. W. 478; Fuchs v. St. Louis, 133 Mo. l. c. 196, 197, 31 S. W. 115, 34 S. W. 508; Trigg v. Land & Lumber Co., 187 Mo. 227, 86 S. W. 222; Warner v. Railroad, 178 Mo. l. c. 134, 77 S. W. 67; Smart v. Kansas City, 91 Mo. App. 586.] The plaintiff was asked: "Q. Now, if you had had somebody there to steady that ladder when this man brushed against it, it would not have fallen?" He answered: "It absolutely would not, and if it had been a good sound ladder it would not have broken in the way it did." Measured by the rule that the proximate cause of an injury is that negligence which sets in motion a train of events that in their natural sequence might and ought to be expected to produce an injury as undisturbed by any independent, intervening cause, the plaintiff must fail because his evidence fails to show that it was the defective condition of the ladder that set in motion the train of events that led to his fall and injury. [Holwerson v. Railway Co., 157 Mo. l. c. 231, 57 S. W. 770; Glenn v. Railway Co., 167 Mo. App. 109, 150 S. W. 1092; and Cody v. Lusk et al., 187 Mo. App. l. c. 342, 171 S. W. 624.] There is no evidence in this case, nor any from which an inference could be reasonably drawn, that had not the reporter brushed against the ladder and started it to rocking, the plaintiff would have received an injury by reason of a defective ladder furnished.

The judgment is reversed. *Sturgis, J.,* concurs. *Robertson, P. J.,* concurs in the result.