WALTER C. SNYDER, RESPONDENT, v. R. T. MURRAY ET AL., DEFENDANTS, GREYHOUND LINES, INC., APPELLANT.

Kansas City Court of Appeals. April 29, 1929.

*Corpus Juris-Cyc References: Evidence, 23CJ, section 1795, p. 52, n. 80; Motor Vehicles, 42CJ, section 589, p. 887, n. 74; section 743, p. 1012, n. 84; section 855, p. 1094, n. 31; section 903, p. 1131, n. 15; section 908, p. 1135, n. 57; section 1053, p. 1242, n. 96; section 1063, p. 1247, n. 67; section 1103, p. 1263, n. 52; section 1107, p. 1263, n. 63; section 1148, p. 1282, n. 8; Witnesses, 40 Cyc, p. 2764, n. 16.

*Harry G. Kyle, Dinwiddie & Sapp, Gotley & Gotley* and *Walter A. Raymond* for respondent.

*Casper S. Yost, Jr.,* and *Hensley, Allen & Marsalek* for appellant.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff and against the defendant, Greyhound Lines, Inc., in the sum of $800 and against the plaintiff and in favor of the defendants, Murray and Robinson. Defendant Greyhound Lines, Inc., has appealed.

The facts show that plaintiff and his wife were injured and his automobile damaged on December 30, 1927, when he ran into a service car belonging to the defendants Murray and Robinson and parked on the south side of Highway No. 40 a few miles east of Columbia and about three miles west of the Fulton "Y." The road at the point of the collision runs east and west. Early in the afternoon of the day in question an eastbound bus of the defendant, Greyhound Lines, Inc., skidded off of the pavement at the place in ques-

tion coming to a stop with its front end in the ditch and headed in a northwesterly direction on the north side of the pavement, which was eighteen feet wide, with its rear end about six feet over the pavement. The driver of the bus, one Westrich, returned to Columbia for the purpose of getting help. He there engaged the services of the defendants, Robinson and Murray, who were partners engaged in the garage business in said city. The three of them arrived at the bus about four or four-thirty P. M. and Murray and Robinson continued in their efforts to move the bus back upon the pavement until about six or six-thirty P. M. At one time they had a cable across the road with one end attached to the bus and the other to a telephone post. A representative of the highway department came along and when it began to get dark he instructed the defendant Robinson not to block the roadway. Robinson and Murray discontinued the work and parked their service car across the road from the bus and off of the pavement on the shoulder and headed it toward the east with its headlights casting a brilliant reflection down the road. Thereafter all efforts to remove the bus from the ditch ceased and Westrich, Murray and Robinson stood around talking for about an hour when the collision occurred. The bus was thirty-two feet long and the service car eight or ten feet long. The rear end of the bus was about twenty feet west of the rear end of the service car. There were no lights upon the rear of the bus and no signal light or other warning placed upon the highway to warn persons approaching the bus.

Plaintiff resided in Kansas City and had been to St. Louis attending a convention. He and his wife left St. Louis in his automobile about two P. M. of the day in question intending to return to Kansas City During the morning of that day it rained. The rain ceased and the pavement in St. Louis had dried off at the time they left but the weather was cold. About an hour after their departure from St. Louis and when they were forty or fifty miles from that place it started to rain. Shortly afterward the rain turned to sleet and plaintiff's automobile was covered with ice. The moisture on the concrete pavement froze and shortly after the sleet turned into snow, but before the snow began to come down the pavement was covered with ice. The snow was light at first but as it continued it got heavier until there was practically a blizzard at times. Finally the snow became an inch or two in depth upon the highway and plaintiff was able to drive his car without slipping or sliding and he did not pass any slick places on the pavement before the collision. After it started to rain plaintiff reduced his speed to twenty-five miles per hour.

Beginning approximately four or five hundred feet from the point of the collision and to that point, plaintiff drove over what appeared

to him to be concrete clear of snow and ice, he being able to see the black line dividing the highway and running through the center thereof. His automobile was equipped with mechanic four-wheel brakes which were in first class condition. His tires were not slick but had good treads. Sometime prior to the collision he stopped and procured a preparation to be placed upon his windshield to keep the snow from adhering thereto. Thereafter the snow did not remain on the windshield to such an extent that he could not see. The car was equipped with a standard windshield wiper. He was able to see by the aid of his headlights for a distance from one hundred to one hundred fifty feet after dark and under the conditions present.

Plaintiff testified that about a quarter of a mile from the service car he first noticed the lights upon that car, which appeared to be on a car approaching him from the west. He then pulled over to the right of the road to give this automobile room to pass. As he approached closer to the lights which he thought were coming toward him he was blinded by their glare. The roadway was straight and slightly rising toward the west at this place. There is no testimony as to exactly where plaintiff was at the time this blinding commenced. He testified that he was about one hundred feet from the service car when it blinded him "the worst;" that when the lights blinded him he took his foot off of the accelerator and his car slowed down to about eighteen or twenty miles per hour. When he reached a place about fifty feet, more or less, east of the service car he first saw the bus projecting over the concrete about seventy-eight or eighty feet from him. He saw the bus as soon as the lights on the service car ceased blinding him and his lights took effect. He could see that the bus had no light upon it. He made no effort to stop when he saw the bus but guided his car to the left to go around it. He testified that he did not think it was necessary to attempt to stop; that it appeared to him that there was room to go around the bus.

There were some men standing in the center of the pavement opposite the bus. As soon as plaintiff turned his car to go around the bus and when his car was headed slightly in a southwesterly direction and about astride the black line running down the center of the pavement he saw these men forty or fifty feet west of him. He then for the first time attempted to stop his car, thinking that if he did not stop he would run into the men. Contrary to its appearance the pavement was not dry and free from ice but was covered with ice and when plaintiff put on his brakes he skidded across the road, turning a little to the left and struck the service car which he thought was approaching him. The left front end of plaintiff's car hit the left front end of the service car. From the

time he removed his foot from the accelerator plaintiff's car continued to slow up to some extent and when he struck the service car it was going at the rate of about eighteen miles per hour. Plaintiff "practically" lost control of his car when he applied the brakes. When his car hit the service car the former skidded around and went into the ditch on the south side of the road, front forward into the ditch about opposite the bus.

When plaintiff approached the scene of the collision he did not see any light or flag to indicate that the bus was there, although he was watching the road ahead of him carefully. He testified that he did not know until after the collision that there was ice on the highway at the scene of the collision and that the service car was not moving toward him. Plaintiff testified that ordinarily he could stop his car going at the rate of twenty-five miles per hour in about fifty to one hundred feet "depending on what kind of ice there was present;" that in this instance "after I found how slick the ice was I realized I could not stop as quick;" that he did not have skid chains upon his wheels in this instance, because he had found from experience "that I had more trouble from skidding with chains than I had with rubber."

Defendant's testimony tends to show that no part of the bus was upon the paved part of the highway; that the nearest it approached the pavement was at its rear end which was about eight inches therefrom; that the service car was parked by the defendants, Murray and Robinson, after they ceased attempting to extract the bus from the ditch; that the service car was not upon the pavement but was upon the shoulder or south of the pavement; that the headlights upon it were dim and that there were lights on a crane upon the car; that there were three burning red lights on the rear of the bus, one on each side and another on top and a light at the sign over the front part of the bus.

Defendant's witness, Robinson, testified that he first saw plaintiff's automobile approaching three hundred and fifty or four hundred feet away; that at this time he, Murray and Westrich were standing on the north edge of the concrete about middle ways of the bus talking; that plaintiff's automobile was approaching about forty miles per hour; that when plaintiff's car reached a point about one hundred and fifty or two houndred feet from the men they started running toward the front end of the bus; that after he first saw plaintiff's automobile it appeared to slow up some, then it "got in the center of the road and didn't seem to slow up any;" that when plaintiff's automobile struck the service car it turned the latter around toward the northwest and the former "slid up the road twenty or twenty-five yards and headed off on the outside of the road;" that the service car was pushed back about fifteen feet off

of the shoulder; that the brakes on the service car were set when it was struck and it was knocked about thirty feet.

Defendant's witness, Westrich, testified that plaintiff's car began to "slip and slide" when it was about one hundred to one hundred and fifty feet away from him; that he was on the north edge of the pavement and ran to the ditch at the front end of the bus; that plaintiff's car approached at a rate of speed of from forty to forty-five miles per hour.

Defendant, Greyhound Lines, Inc. (hereafter called the defendant), insists that its demurrer to the evidence should have been sustained for the reason plaintiff was guilty of contributory negligence as a matter of law. In this connection it is claimed that plaintiff should have reduced the speed of his car when he became blinded by the headlights on the service car, so that it could have been brought to a stop if the conditions of the highway and the traffic ahead of him rendered a stop necessary, and if he had done this it would have been unnecessary for him to have made an emergency stop, and he would not have been injured; that instead of this he did not at any time observe that the service car was standing still or heed the presence of the men on the road until he was almost upon them; that he was required by law to exercise the highest degree of care in operating his automobile anticipating at all times that persons might be moving on the highway or near it.

There is some conflict in the authorities as to what is necessary for a driver of an automobile to do when he is blinded by the lights of an approaching car. There is some authority to the effect that it is necessary for one in such a position to stop, or to have his car under such control that he can stop it upon the first approach of danger. Of course, under these authorities it is necessary for such a driver to attempt an immediate stop if he is totally blinded, as plaintiff was in this case. However, the best considered authorities hold that whether it is necessary for the driver to stop his car or to take action looking toward its immediate stopping under such circumstances, is a question for the jury. Of course, we do not mean to say that there cannot be imagined a case where the driver may be guilty of contributory negligence as a matter of law in failing to take measures to immediately stop his car under such circumstances. However, we have concluded that, under the facts in this case, the matter was a question for the jury. As was stated in Schassen v. Columbia Gorge Motor Coach System, 270 Pac. 530, 533:

"There are so many elements entering into a driver's conduct in order to avoid accidents that it would be unwise to lay down a rule that they should undertake to stop their automobiles when temporarily blinded by cars on the highway. Whether or not the

brakes should be suddenly and vigorously applied depends upon the condition of the road, the alignment thereof, and the weather. Ordinarily one would drive through the space of such offending lights before he could stop his car. It is easy to conceive of cases where one who stopped his automobile suddenly because of the glaring lights could be held negligent. Where there is much traffic automobiles suddenly stopped might seriously interfere therewith and cause serious injury to others lawfully using the highway. These considerations lead us to hold that whether one driving his car while so blinded is guilty of negligence is dependent upon the circumstances of the case and is peculiarly a question of fact to be determined by the jury under appropriate instructions.'' [See, also, Coca-Cola Bottling Co. v. Shipp, 297 S. W. 856; Aubin v. Duluth St. Ry. Co., 211 N. W. 580; Devoto v. United Auto Transp. Co., 223 Pac. 1050; Kendrick v. K. C., 237 S. W. 1011.] We find the Missouri cases cited by the defendant not to be in point. In Solomon v. Duncan, 194 Mo. App. 517, the plaintiff concededly had been drinking, and his evidence as to the slow speed he was going was manifestly disproved by the conceded results of the impact of the collision, and there were differences as to the size and character of the obstruction and the ease with which it could have been avoided even at the very last minute. [See Ross v. Hoffman, 269 S. W. 679, 680.] The Solomon case also involves the matter of driving in a fog or mist in a city. In the case at bar plaintiff testified that his view was only momentarily or for an instant obscured by reason of the blinding lights and the collision occurred in the country, at a time, where we may infer from the testimony, vehicular traffic was not dense. There is an entire lack of any evidence that pedestrians frequented this roadway.

In the case of Wheeler v. Wall, 157 Mo. App. 38, cited by the defendant, there was a curve in the road which plaintiff's chauffeur drove around too fast and collided with another car. As before stated in the case at bar the obscuration was unanticipated and temporary. We fail to find any application of the other Missouri cases cited by the defendant. As to the foreign cases cited by it, they are all of one class and most of them are discussed and the falsity of their reasoning fully shown in the cases of Schassen v. Columbia Gorge Motor Coach System and Coca-Cola Bottling Co. v. Shipp, supra.

The evidence in the case at bar shows that plaintiff took some means of precaution when he became blinded by the lights. He took his foot off of the accelerator and reduced the speed of his car. He was going up a slight incline which naturally tended to decrease the speed without the application of the brakes.

As to the contention that he should have observed that the service car was standing, it was said in Smith v. Levison, 226 N. Y. S. 311, 315:

"When one looks at the lights on an automobile on the road directly ahead of him, it is very difficult to tell whether or not that car is moving. That the defendant did not instantly realize the significance of the lights before him is no element of negligence on his part."

We cannot say that plaintiff was guilty of contributory negligence as a matter of law because he did not heed the presence of the men on the road sooner. He saw them as soon as he turned his car to go around the bus. Only an instant of time transpired between his emerging from his blinded position until he saw these men and during that time he no doubt momentarily had his attention upon the bus which was immediately in front of him.

While the evidence shows that the road over which plaintiff had come for a great distance was covered with snow, the evidence also shows that the wind was blowing and he testified that it appeared as though there were no ice or snow upon the highway at the place of the collision. We cannot say as a matter of law that he should have acted upon the assumption that there was ice upon it and that it was slippery. Although, under the statute plaintiff was required to use the highest degree of care, under the circumstances we think the matter of contributory negligence was one for the jury.

It is further contended that defendant's demurrer to the evidence should have been sustained for the reason there was no negligence shown on its part. The negligence pleaded in the petition is that the defendants were negligent (1) in permitting the bus and the service car to extend over the concrete slab or pavement; (2) in failing to put signal lights or other warnings on the highway to warn persons approaching of the presence of the bus and the service car; (3) in that the agents and servants of the defendant negligently stood in the roadway between the bus and the service car; (4) in defendants' negligently causing and permitting the service car to stand on said road with headlights of unusual intensity. (5) The case was apparently tried upon the theory that the petition alleged negligence on the part of the defendants in failing to have a lighted tail light upon the bus.

We think that defendant's contention that there was no testimony tending to establish either the first or the second allegation of negligence as being a proximate cause of the collision is well taken. There was no negligence shown in permitting the bus to extend over the paved part of the highway and there is no evidence that the service car did so. The testimony fails to tend to show a causal connection between the absence of a light either upon the bus or

the highway and the collision. Plaintiff testified that when he reached a point where the lights no longer blinded him he saw the bus and was then about seventy-eight or eighty feet from it. He thought there was room for him to go by and he made no effort to stop for this reason. There is no evidence tending to show that he would not have safely gone around the bus and passed the service car had it not been for the fact that he put on his brakes. His own testimony shows that he did not put on his brakes on account of the presence of these objects but on account of the men standing in the center of the roadway.

The only evidence of negligence, if any, in reference to the bus and the service car, so far as the present defendant is concerned, was in failing to place a warning sign or light, or take some measures to warn persons of the obstruction caused by the bus being upon a portion of the paved highway. While the defendant is in no wise responsible for the presence of the service car and the bright lights thereon (a question hereinafter to be discussed), it was under the duty of taking precautions to warn persons of the presence of the bus and in that connection to take into consideration the danger caused by the presence of the service car where it was in relation to the bus and in the condition it was with reference to the bright lights upon it. But as plaintiff saw the bus in such time that it was not necessary for him to take any measures to stop and he could have turned around and passed it had it not been for the fact that the men were on the highway, we fail to see how the absence of a warning of the presence of the bus had anything to do with the causing of the collision.

In contending that the absence of a warning light was one of the proximate causes of the collision plaintiff says:

"It is true that plaintiff saw the bus in time to avoid it but it is also true that in avoiding it when he saw it he was forced to swerve his car sharply to the left. This gave plaintiff's car such direction that when he was forced to apply his brakes he slid on in the direction he was headed (southwest) struck the service car and went into the ditch. If there had been a red light on the rear of the bus plaintiff would have seen it sooner and had an opportunity to slow down or make a more gradual turn to the left and thus have avoided the accident. It may be that had there been a red light on the rear of the bus plaintiff could have seen it for one hundred fifty feet or more before he got to it. The bus was clear across the paving from the service car and it is likely a red light thereon could have been distinguished from the bright white lights of the wrecker."

The evidence shows that plaintiff's car was headed only slightly to the southwest at the time he saw these men on the pavement and applied his brakes. He was then about in the middle of the pave-

ment astride the black line. When he applied his brakes the car not only slid in the direction in which it was going but "it turned a little to the left." In other words he lost control of his car and it not only had a forward motion but turned to the left. Assuming that the jury could say that plaintiff would have seen a red light sooner, had there been one, despite the glaring headlights on the service car, there is nothing in the testimony tending to show that he would have turned around the bus any sooner than he did. The fact that he might have seen a red light sooner is no proof that he would have seen the men sooner. As a matter of fact had he seen a red warning sign when he was one hundred and fifty feet from the bus he no doubt would have immediately applied his brakes because he thought the service car was approaching on the opposite side of the pavement and had this been so he probably would not have turned around the bus until he learned the position of the service car. There is no evidence that plaintiff could have stopped his car without going into the ditch even in one hundred fifty feet in view of the fact that in plaintiff's own words "after I found how slick the ice was I realized I could not stop so quick." In other words he could not have stopped in fifty or a hundred feet. So had he seen a red light one hundred and fifty feet away he no doubt would have applied his brakes at once and slid into the bus. Had this occurred defendant would not have been liable on any theory. We are not to be construed as holding as a matter of law that any certain thing would have occurred had a red light been present, but what we are trying to point out is that plaintiff's argument is based upon nothing more than speculation or conjecture, and it is well settled that a verdict cannot stand upon mere guess or speculation. [Lindman v. Carroll, 308 Mo. 187, 200, 201; Powell v. Electrical Co., 195 Mo. App. 150; Van Bibber v. Swift & Co., 286 Mo. 317, 334.]

The sole proximate cause of the collision, assuming that plaintiff was not guilty of contributory negligence, was the presence of the men in the center of the road together with the effect of the headlights in preventing him from discovering the men sooner, requiring him to suddenly apply his brakes and slide into the service car. However, defendant was not responsible for the glaring headlights, although Westrich's conduct must be measured by the surrounding circumstances, including the presence of the service car and the bright headlights. The evidence shows that Murray and Robinson were independent contractors, employed by Westrich to remove the bus from the ditch. There is no evidence that Westrich exercised any control over the men in the work or had anything to do with the placing of the service car in the position it was in. It is therefore unnecessary to pass upon the question of what

effect the verdict in favor of Murray and Robinson has upon the situation.

While plaintiff claims that the very nature of the work obstructed the highway and therefore, the doctrine of independent contractor is inapplicable, the evidence shows that the work itself had ceased an hour before the collision and that Murray and Robinson were not then engaged in any matter that would necessarily obstruct the highway. [See Vosbeck v. Kellogg, 78 Minn. 176; City of Independence v. Slack, 134 Mo. 66.]

As to the men in the roadway, plaintiff's evidence does not show how many there were or who they were. There were three men at the scene of the collision, two of whom, Murray and Robinson, were independent contractors for whose conduct defendant is not liable. However, we think there was some evidence, taking plaintiff's and defendants' evidence together, tending to show that Westrich was one of the men in the middle of the road and his presence there with the others caused plaintiff to suddenly apply his brakes, and it was for the jury to say whether Westrich's conduct was negligent. We therefore think a prima-facie case was made and defendant's demurrer to the evidence should have been overruled. Westrich testified that he was on the north side of the pavement next to the bus when plaintiff approached; that he ran toward the front end of the bus and was not standing on the highway so as to obstruct plaintiff's passage. However, there was evidence on the part of the defendant that all three of the men were south of the highway in front of the service car a few minutes before the collision; that when plaintiff's car came into view three hundred or three hundred and fifty feet distant the men did not anticipate any collision and all three of them leisurely walked across the road to the south side thereof; that afterwards they took a position on the north edge of the pavement about middle ways of the bus and when they saw plaintiff approaching too near they ran to the front of the bus and were in the ditch at that place at the time of the collision. As defendants' evidence tends to show that the three men did not again start across the pavement and were not in front of the oncoming automobile after they crossed over, the jury, if it believed plaintiff's testimony that the men were in front of his car at the time he applied his brakes, were justified in arriving at the conclusion that instead of the men crossing five minutes prior to the time of the collision, as testified to by one of the defendants' witnesses, they were crossing much later than that time and were on the pavement in the act of crossing at the time plaintiff saw them in front of his car. Plaintiff testified that he could not tell whether they were moving or not. Although there is no direct testimony on the part of the plaintiff that Westrich was one of the men in front

of plaintiff's car, the jury was authorized to infer that he was in view of the testimony as all three of the men crossed the pavement at the same time. Of course, if his presence there was one of the proximate concurring causes of plaintiff applying his brakes and the consequent collision and injury, then defendant is liable, although Murray and Robinson were also negligent in crossing the road. [Floun v. Birger, 296 S. W. 203.]

Plaintiff contends that Westrich was in charge of the situation and directing the actions of Murray and Robinson and it was at his suggestion that they crossed the road. We find no testimony of any substantial nature tending to show that Westrich was directing the men at the time in question. The testimony that plaintiff relies upon was to the effect that when the witness Murray saw the plaintiff approaching three hundred or four hundred feet away Westrich said "we had better get out of the way, he is coming too fast" and that then Westrich and Robinson ran across the pavement. This testimony was contained in the deposition of Murray, used by plaintiff solely for impeachment purposes, and therefore, this testimony cannot be considered for any purpose except impeachment. [Courter v. Geo. W. Chase & Son Merc. Co., 299 S. W. 622.] Of course, we are not intending to say that even if this testimony had been adduced at the trial it would have been sufficient to show that Westrich was directing in a legal sense the actions of Murray and Robinson and therefore that his employer was liable for their actions. [See Kipp v. Oyster, 133 Mo. App. 711; Long v. Moon, 107 Mo. 334.]

However, as before stated there was sufficient evidence to take plaintiff to the jury on the question of the negligence of Westrich crossing the road in front of plaintiff's car at the time in question. The evidence shows that at the point where these men, including Westrich, crossed the road it was materially obstructed by the bus and that the situation was rendered very dangerous by the presence of the service car with the bright lights upon it. For Westrich to have rushed out in front of plaintiff's car and remained there when plaintiff was only fifty feet distant, raises at least a jury question as to whether Westrich's conduct was negligent.

Complaint is made of the giving of plaintiff's instruction C. This instruction told the jury that if Murray and Robinson, as the agents and servants of the defendant, Greyhound Lines, parked their service car headed east on the south side of the road, and that plaintiff was driving and operating his automobile approaching said point from the east and that it was dark and the pavement of the highway covered with a thin layer of ice, and "that two or three agents and servants of the defendants were standing in the middle of the road between said bus and said service car, if so, and that the

defendants negligently failed to place signal lights or other warning on said highway to warn persons approaching said point of the presence of said bus and said service car, if so, and that plaintiff was exercising the highest degree of care for his own safety, if so, and that plaintiff attempted to slow down and stop said automobile but said automobile skidded on said icy pavement and came into violent collision with said service car, if so, and as a direct result therefore plaintiff Walter C. Snyder suffered any injury, if so, then your verdict should be for the plaintiff and against the defendants.''

It is apparent that this instruction attempts to submit but one item of negligence, and that is whether all of the defendants were negligent in failing to place signal lights or other warning on the highway. But as we have held that there was no testimony tending to show that this was one of the proximate causes of the collision, the instruction was clearly erroneous. This instruction is not like the one in Agee v. Herring, 298 S. W. 250, cited by the plaintiff, for in that case several specifications of negligence were submitted in the conjunctive, while in the instruction in the case at bar only one specification of negligence is submitted. Here the other matters submitted merely went to the conditions present, tending in plaintiff's estimation to make the conduct of the defendants negligent in failing to place signal lights or other warning on the highway.

However, even if the other matters submitted in the instruction were submitted as items of negligence, it would still be erroneous for the reason that the only matter therein attempted to be submitted that plaintiff was entitled to submit as against the present defendant, Greyhound Lines, Inc., was that the agent of this defendant was in the middle of the road between the bus and the service car. The instruction says ''two or three of the agents,'' etc., without saying which two of the three. While there was evidence that there were three of them on the pavement, there is also evidence on the part of the defendant from which the jury could say that Westrich was not in the middle of the pavement. But under this instruction, even should the jury find that only Murray and Robinson were in the middle of the pavement, they could find against the defendant, Greyhound Lines, Inc. As before stated there was no evidence tending to show that said defendant was responsible for the acts of Murray and Robinson.

Aside from this the instruction tells the jury that as a matter of law the mere standing in the middle of the road by these men was negligence because plaintiff's car was approaching regardless of how near and other material circumstances, while this was clearly a question for the jury under a proper instruction, at least in view of defendants' testimony.

Complaint is made of plaintiff's instruction D. This instruction submits the negligence "of two or three of the agents and servants of the defendant" standing in the middle of the road. From what we have said relative to plaintiff's instruction C it is apparent that instruction D is likewise erroneous. There are other complaints made as to plaintiff's instructions C and D which can be readily met at another trial, and it is unnecessary for us to pass upon them.

Defendants complain of the giving of plaintiff's instructions K and L, but in view of the fact that the jury has found in favor of the defendants Murray and Robinson, these instructions will not be given at another trial and it is unnecessary for us to pass upon the contentions made in reference to these instructions.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.